NEW YORK INVESTORS, INC., Respondent, *v.* MANHATTAN BEACH BATHING PARKS CORPORATION and Another, Appellants.

Second Department, June 13, 1930.

*Nathan L. Miller* [*Sayers Brothers* and *William Harvey Smith* with him on the brief], for the appellants.

*Jackson A. Dykman* [*Sigourney B. Olney* and *Jules Haberman* with him on the brief], for the respondent.

TOMPKINS, J. This action was brought for specific performance of a contract for the sale of real estate at Coney Island, made by the plaintiff as the seller, with the defendant Manhattan Beach Bathing Parks Corporation as the purchaser and the defendant Joseph P. Day as guarantor of performance by the said purchaser.

By the pleadings the fee simple ownership and possession of the real premises in question in the plaintiff is admitted. The complaint alleges an agreement between the plaintiff and defendant Manhattan Beach Bathing Parks Corporation, dated January 18, 1929, in and by which the plaintiff agreed to sell and convey to the defendant corporation the premises in question, subject to certain easements among which are the following:

" Subject to street opening proceedings, pending or proposed, affecting said premises, and any rights of the City of New York to open streets and acquire part of the said premises therefor.

" Subject to the rights, if any, of the City and — or State of New York in any portion of said described parcels lying within the limits of Sea Breeze Avenue, as originally laid out."

The agreement in full was not incorporated in the complaint, nor did the complaint refer to a provision in said contract which was set forth for the first time in full in the plaintiff's reply to a counterclaim set up by the defendants, the two most pertinent parts of which are as follows:

" The seller agrees to give and the purchaser agrees to accept a title such as the Title Guarantee and Trust Company will approve and insure, subject to the exceptions set forth and provided for in this agreement but in the event that the seller is unable to convey such a title, the only obligation of the seller shall be to refund the purchase money paid on account of this contract and the expense of the examination of title to said premises, which in no event shall exceed the net established rates of the Title Guarantee and Trust Company, and in any such event the sole remedy of the purchaser shall be had in accordance with the provisions of this paragraph.

" The seller shall convey title to the premises by bargain and sale deed with covenants against grantors acts, which shall be executed and acknowledged by the seller at the seller's expense and

shall convey the absolute fee of said premises free from all encumbrances except as herein stated and provided for."

The defendants denied in their answers the allegation in the complaint that the plaintiff agreed to convey on February 18, 1929, by bargain and sale deed, the fee simple of said premises subject to certain specified mortgages, leases and agreements, and also subject to the exceptions stated in the contract, and also denied the allegation in the complaint that the plaintiff was, at the time fixed for the closing, namely, February 18, 1929, and still is ready, willing and able to perform the agreement and deliver a deed in accordance with the terms thereof. The defendants, in their answers and counterclaim, allege that there were existing public and private easements and rights in other parties in that portion of the premises, extending over the north half of Sea Breeze avenue, being a forty-foot strip and being the southerly portion of the premises under contract of conveyance. This strip the defendants claim is a part of a legally opened and established street which has never been legally closed. Other claims of the defendants respecting misrepresentations as to the condition and location of the building and encroachments of the building were abandoned at the trial.

Prior to the date fixed for the closing of the contract, the title was submitted to the Title Guarantee and Trust Company for a search and report. The following were some of the objections in said report, contained in a letter dated February 13, 1929, sent by the defendants' attorney to the plaintiff.:

" Except all PRIVATE and public easements in the north half of the former Sea Breeze Avenue.

" Except rights of the City of New York in north half of former Sea Breeze Avenue derived from Section 4 of Chapter 506, Laws of 1918, as amended by Chapter 315, Laws of 1923, which authorizes the use of ' streets legally opened abutting thereon ' for constructions in connection with the public beach."

As a part of the same communication, the defendants' attorneys wrote plaintiff as follows:

" The map shows that the north line of the water grant ran diagonally through a corner of the property west of Calm Street and through the middle of the property east of Calm Street. Furthermore, you claim, as I understand it, an avulsion of the land up to where Sea Breeze Avenue is now supposed to stop. If so, you claim that the high water line was back that far. Consider this in connection with their above objections and also consider the fact that there is a private owner on Sea Breeze Avenue as it now exists, who probably at all times had an easement permitting him to go over the bed of Sea Breeze Avenue to the water wherever it might be.

" Can you get the title company to remove these objections or will your company, outright, guarantee that the purchaser may get a new mortgage, such as he may need, at any time for his purpose."

On February 15, 1929, the title company wrote the defendants' attorneys stating that these objections set up by the title company would be covered by an exception in the policy of insurance excepting all public easements, if any, and all public rights, if any, of the city of New York in the north half of former Sea Breeze avenue, and that the word " private " in said exception had been omitted therefrom, and that the installment assessments for the grading of Sea Breeze avenue up to 1928 appear on the books of the city of New York as having been paid. The assessment against the property in question for grading Sea Breeze avenue appears in plaintiff's Exhibit 3 and totals $11,750.39, and was assessed in forty yearly installments, the first of which was levied in 1893. The closing of the title was adjourned by consent, and on February 26, 1929, the Title Guarantee and Trust Company wrote the attorneys for the defendants, stating: " We do not believe that there can be any private easements in a Public Highway " and for that reason it had eliminated the exception as to private easements, and further stated as follows: " Now as to the question of public easements concerning which you have written. This Company is willing to withdraw such exception as to public easements in so far as the same may be distinguished from the rights of the City of New York in any portion of such premises described in the contract lying within the limits of Sea Breeze Avenue as originally laid out."

The title company, in the same communication, stated as follows: " We assume that your client having contracted to purchase the property in good faith is anxious to have a title policy which will conform as nearly as possible to the terms of the contract. With this idea in mind, we have endeavored to eliminate from our report on the title all exceptions which we consider to be immaterial or could be safely disregarded or waived."

Then follows a list of exceptions which are similar to the provisions of the contract as to incumbrances and defects subject to which the defendant corporation agreed to take title. Exception No. 6 is as follows:

" 6. The rights, if any, of the City in any portion of the premises lying within the limits of the north half of Sea Breeze Avenue as originally laid out."

Under chapter 153 of the Laws of 1901 the city of New York took over the payment of the assessments for the balance of the cost of grading Sea Breeze avenue, and all lands so assessed were released and discharged from present and future liens therefor.

The defendants' attorneys inquired of the title company as to whether Sea Breeze avenue had been closed or is still legally open, whether or not the city has any rights therein, and, if so, exactly what the rights of the city are, and also whether there are any private rights in this street, and the title company, under date of March 6, 1929, replied, stating that Sea Breeze avenue was opened by the board of supervisors of Kings county pursuant to the provisions of chapter 554 of the Laws of 1881, a street opening proceeding was instituted, and an easement for street purposes acquired only in the northerly half, but that the validity of this improvement was collaterally attacked in 1910, in a proceeding to annul an assessment, in which it was held that the board of supervisors of Kings county, which had passed a resolution for the street opening, was without jurisdiction or authority so to do, and that the proceedings, assessments and sales based on said resolution were null and void and of no effect; that a resolution was adopted by the board of estimate and apportionment on April 17, 1926, by which the closing and discontinuing of Sea Breeze avenue pursuant to section 442 of the Greater New York Charter (as amd. by Laws of 1917, chap. 632) was attempted, but it was without waivers of abutting property owners or notice or compensation to them.

The title company concludes its letter by stating as follows: " As to what effect the above may have on the rights of the City of New York and what effect the actual physical conditions existing subsequent to the original opening of Sea Breeze Avenue may have had on such rights as the City originally acquired, this Company will not undertake to state. You will have to draw your own conclusion."

A motion by the defendant to dismiss the complaint on the ground, among others, that the plaintiff had not proven that the title was legally marketable in respect to the objections interposed by the defendant corporation, and that the plaintiff had not proved that on the date and hour of closing it was ready, able and willing to convey the absolute fee of the premises free from all incumbrances except as in the contract stated and provided for, was denied and exception taken. The defendant rested on the plaintiff's case, and judgment was granted the plaintiff against both defendants for the relief demanded in the complaint, the Special Term holding that the defendant, appellant, corporation was obligated to take such title as the Title Guarantee and Trust Company would approve and insure, subject to the exceptions set forth and provided for in the contract, regardless of the marketability of the title itself. With this holding I do not agree.

The seller was obligated to convey the absolute fee of the premises,

free from all incumbrances except such as are stated and provided for in the contract, and, in addition, the purchaser was only obligated to accept the title if it was one that the Title Guarantee and Trust Company would approve and insure, subject to the exceptions set forth in the said agreement. The provision in a contract for a title company policy is merely an added safeguard, for the benefit solely of the purchaser, which is provided at the expense of the purchaser and which the purchaser may, if he cares to do so, waive. Under the pleadings, the burden of proving marketable title subject to the exceptions set forth in the contract was on the plaintiff, and this burden was not met. Under the contract, the conveyance was to be made subject to the rights, if any, of the city and/or State of New York in any portion of the premises described therein, but was not subject to private easements, and it was incumbent upon the plaintiff, when the marketable title alleged in the complaint was denied by the answer, to establish a marketable title as a part of its case and to prove that there were no private easements, such as defendants alleged, over the premises agreed to be conveyed. The mere statement by the title company that in its opinion there could be no private easements in a public street, was an opinion merely and did not affect the marketability of the title, and the title company's statement that it endeavored to eliminate from its report on the title, exceptions which it considered to be immaterial or in its opinion could be safely disregarded or waived, had no bearing on the question of the marketability of the title, nor was it sufficient to compel the defendant corporation to accept a title with defects other than those subject to which title was agreed to be taken.

The contract must be read as a whole, and the clause with reference to the title policy and the clause agreeing to convey the absolute fee of the premises free from all incumbrances except those mentioned in the contract require that two standards must be met.

In *Sattler* v. *Hallock* (160 N. Y. 291, at pp. 297 and 298) it was held that " It is always the duty of a court, in construing a written instrument, if possible, to ascertain the intention of the parties; and in order to determine its proper construction resort must be had to the instrument as a whole, and effect must be given to every clause and part thereof when it can be done without violence."

It would, to my mind, be entirely improper to hold that the provision in the contract that the seller agrees to convey the absolute fee of the premises free from all incumbrances except those stated in the contract is a nullity, or may be disregarded, and that the provision that the seller agreed to give and the purchaser agreed to accept a title such as the Title Guarantee and Trust Company would approve and insure, subject to the stated exceptions, should

alone control. It must be remembered that the purchaser was paying for the title insurance and procuring the same, and that the title company's policy would be limited in amount to the purchase price, whereas the purchaser, on taking title, might, at any time in the future, build upon the premises and otherwise improve them and expend large sums of money greatly in excess of the amount of the insurance, as to which excess the purchaser would be at a loss if he were not protected by the clause of the contract providing for a conveyance of the fee of the premises free from all incumbrances except those stated in the contract. To hold otherwise would be to compel the purchaser to accept as a substitute for the quiet enjoyment incident to a legally marketable title, one that was subject to be disturbed by litigation, but nevertheless one that would be defended by the title company to the extent only of the amount of the title insurance.

Admittedly, the seller, the plaintiff, respondent, herein, drew the contract, and it does not appear that the defendant corporation was represented at the time of the making of the contract by an attorney. If ambiguity exists, an agreement is construed most strongly against the one drawing it.

In *Marshall* v. *Sackett & Wilhelms Co.* (166 App. Div. [2d Dept.] 141, at p. 144) it was said that " As the writing was made by the defendant, it was not to be favored in the interpretation, but, on the contrary, the paper was to be construed strictly against it, under the familiar rule of *contra proferentem.*"

But, in my opinion, there is no ambiguity in the contract. It clearly provides that the defendant corporation should receive not only a title that the title company was willing to insure, but one that was free from all incumbrances save those stated in the contract.

The plaintiff itself must have regarded the provision in the contract that the seller shall give a title free from all incumbrances except those stated in the contract was the important feature thereof, because that provision was set up in the complaint, whereas the complaint did not contain the provision with reference to the title company policy. That first appeared in the plaintiff's reply to the defendants' counterclaim.

Williston on Contracts (Vol. 2, § 623, p. 1206) states as follows: " The interpretation given by the parties themselves to the contract as shown by their acts will be adopted by the court, and to this end not only the acts but the declarations of the parties may be considered."

In *Murphy* v. *New York Yellow Cab Co. Sales Agency, Inc.* (207 App. Div. [2d Dept.] 820) the court stated that the pleader " ' should determine in his own mind the legal effect of the written contract or

other document upon which his cause of action is founded, and plead its legal effect as he understands it.' "

The plaintiff, respondent, contends that the provisions of the contract in reference to title insurance made the title insurance company the arbitrator of any dispute concerning the marketability of the title, and that, inasmuch as the title company approved and offered to insure the title, defendants were bound thereby. This is not so.

Even the title company does not say that the title is marketable. It states, in substance, that it is willing to take a chance on the defects, other than those which might properly be excepted in accordance with the contract.

In *Matter of Zimmerman* v. *Cohen* (236 N. Y. 15) it was held that the petitioner's act in bringing an action for specific performance operated as a waiver of the arbitration clause in the contract, and that such act was clearly inconsistent with the claim that the parties were obligated to settle their differences by arbitration. The same rule applies here. If the plaintiff regarded the title company as arbitrator, it should have brought a proceeding under the Arbitration Law, and if it regarded an arbitration as having been made by the title company, then the plaintiff should have brought an action to enforce the judgment of the arbitrator. In this action, the complaint did not even allege the provision as to title insurance, nor was there any reference in the plaintiff's pleadings to the present claim that the title company was arbitrator.

In *Fineman* v. *Callahan* (222 App. Div. 752) a contract for the purchase of real property provided that the purchaser shall accept a title which the Title Guarantee and Trust Company would approve and insure, and also declared that the deed should be in proper statutory short form for record and should contain the usual full covenants and warranties. The title company refused to insure the title and the purchaser waived inability to procure a title policy, but, nevertheless, the court held that the purchaser might refuse to take title because of encroachments unless the seller could show upon the trial that these encroachments were trivial and did not affect the marketability of the title.

We have a situation in *Flanagan* v. *Fox* (6 Misc. 132; affd., 144 N. Y. 706) where there were the same two provisions for title insurance and a marketable title as in the case now under consideration. Though the title was in fact marketable, the title company refused to insure, and the court held that the purchaser need not take title, because, in addition to a marketable title, the approval of the title company was also required. To hold otherwise would, in effect, be to condemn the covenant to secure

the approval of the title company as meaningless and redundant. In the case before us the title has not been proved to be marketable, as alleged in the complaint and denied by the answer, though the title company will insure it. (See, also, *Allen* v. *McKeon*, 127 App. Div. 277; *Downs* v. *Lehman*, 123 id. 11; *Amdur* v. *Shapiro*, 220 id. 460, and *Beinhauer* v. *Morris*, 142 id. 398, to the same effect.)

The purchaser is not bound to buy a law suit between himself and the title company or other parties having or claiming private easements, and the claims by defendants that there are private owners who have rights in Sea Breeze avenue have not been disproved but on the contrary are established by the proofs.

In *Reis* v. *City of New York* (188 N. Y. 58) it was held that an abutting owner on a street has a private easement which extends to the next cross street or avenue on either side of the lot owned by him. To the same effect is the decision in *Batchelor* v. *Hinkle* (140 App. Div. 621, at p. 623).

Whether the private owner or owners referred to by the defendants as having rights in Sea Breeze avenue care to exercise their rights is not important. The point is that there are apparently definite rights which a private owner or owners may, if they so desire, exercise, which makes the title unmarketable. The plaintiff, through the title company, claims that there can be no private rights in a public street, while, on the other hand, it erroneously claims that Sea Breeze avenue is not a public street because it had been closed.

To render the title unmarketable, it is only necessary that there be a reasonable doubt. Here there is not only a doubt but an actual present defect. The plaintiff has not shown affirmatively that the title was marketable over and above the exceptions listed in the contract on the date of closing or at the time of the trial.

In *Brokaw* v. *Duffy* (165 N. Y. 391) the court held: " A title is not marketable if subject to a serious question of fact which might be decided in different ways by different tribunals." And, in the opinion, the court said: " Under these circumstances, the defendant [seller] was bound to show by proof, which would be satisfactory to a reasonable person, that her title was unimpaired by the alleged defects of which the plaintiff [purchaser] had notice, and when she omitted and neglected to make any explanation the plaintiff was not required to accept the proffered title, but might recover the money paid upon the contract."

In *Greenblatt* v. *Hermann* (144 N. Y. 13, at p. 20) the Court of Appeals says: " The title tendered need not in fact be bad in order to relieve him from his purchase, but it must either be defective in fact, or so clouded by apparent defects, either in the record or by

proof outside of the record, that prudent men, knowing the facts, would hesitate to take it."

The title company refused to commit itself as to the legal marketability, stating that the defendants would have to draw their own conclusions, but nevertheless was willing to issue an insurance policy for the purchase price, in accordance with what it interpreted the contract to mean.

The northerly half of Sea Breeze avenue, over which the defendants clam there are private easements, and which is a part of the property under contract of sale and which was never legally closed, is on the ocean front of the property and adjoins the boardwalk. Without immediate access to the boardwalk, the property would be greatly depreciated in value.

Sea Breeze avenue, after having been laid out in 1891 and placed on the city map, was paved, curbed, graded and flagged, and assessments were levied and paid by private owners for nineteen years. It was never legally closed, and abutting owners have rights in it.

One standard required by the contract as to title insurance was technically met by the title company agreeing to insure in accordance with the terms of the contract, but the other standard as to the marketability of the title was not met. The burden was on the plaintiff, inasmuch as the marketability was asserted in the complaint and denied by the answer, to prove by a fair preponderance of the evidence that a marketable title was tendered. This not having been done, the judgment should be reversed upon the law and the facts, with costs to defendants against the plaintiff, the complaint dismissed upon the merits, and judgment directed for the defendant corporation against the plaintiff upon its counterclaim for $25,000, the amount of its payment on account of the contract, and interest, plus the amount paid for the title search, with costs. Findings of fact and conclusions of law inconsistent herewith should be reversed and new findings and conclusions made.

HAGARTY, CARSWELL and SCUDDER, JJ., concur; YOUNG, J., dissents on the ground that plaintiff's record title was conceded, the title company certified a marketable title and expressed the opinion that no private easements existed, and the record upon appeal fails to show any defects rendering the title unmarketable.

Judgment reversed upon the law and the facts, with costs to defendants, complaint dismissed upon the merits, and judgment directed for defendant corporation against plaintiff upon its counterclaim, with costs. Findings of fact and conclusions of law inconsistent herewith are reversed and new findings and conclusions will be made. Settle order on notice.