HENRY DeB. CLARKE AND ALICE CLARKE *v.* TITLE GUARANTY CO. OF HAWAII, A REGISTERED HAWAII CO-PARTNERSHIP, CONSISTING OF KENNETH MAKINNEY AND DAVID T. PIETSCH, CO-PARTNERS, HOWARD E. BALL, RUTH IRENE BALL, HOWARD A. REYNOLDS, AND SIGURD E. JOHNSON.

No. 4084.

MAY 24, 1960.

TSUKIYAMA, C. J., MARUMOTO, CASSIDY, WIRTZ AND LEWIS, JJ.

OPINION OF THE COURT BY TSUKIYAMA, C. J.

This litigation arose from a bill of interpleader filed by Title Guaranty Co. of Hawaii, a copartnership. Appellants, who are designated herein as "sellers," and two of the appellees, Howard E. Ball and Ruth Irene Ball, designated as "purchasers," entered into and executed a written contract, entitled initial payment receipt and contract, dated March 15, 1954, whereby sellers, for the price of $26,250, agreed to sell and purchasers to buy, "free and clear of encumbrances," approximately 16,788 square feet of land with residential improvements thereon at 2578 Pacific Heights Road in Honolulu. The contract contained, *inter alia,* the following provision: "That in the event the title to said property shall not prove merchantable and said Seller shall not perfect or be able to perfect the same within a reasonable time from this date, the Purchaser shall have the right to demand and receive of the Seller, or his Broker, said initial payment and be released from all obligations hereunder."

Pursuant to the terms of said contract, purchasers made a partial payment to Howard A. Reynolds, real estate broker, in the total sum of $3,000. This sum was turned over to Title Guaranty Co. of Hawaii to be held in escrow, which sum is now on deposit with the clerk of the first circuit court.

The evidence adduced shows that purchasers, in response to a newspaper advertisement, visited the premises in question twice. On the first occasion, Mrs. Clarke, seller, and on the second, Mrs. Agnes Bryan, saleslady for the broker, showed them the property. There was no dis-

cussion at any time pertaining to the location of the improvements with reference to the boundary of the property, nor was there any mention or intimation as to the existence of any right of way in favor of other property owners running over and through a portion of the property in question. Later, after signing the contract and making the down payment, purchasers obtained a survey map from which they discovered for the first time that the garage on the premises extended beyond the boundary line into Pacific Heights Road, and that the residential building encroached upon a right of way used in common by other property owners. Purchasers applied for but were unable to obtain either a title insurance or a mortgage loan on the property on account of the encroachments.

The evidence shows that the property involved consists of two lots, one containing 6,714 square feet and the other 10,064 square feet, or a total of 16,778 square feet; that approximately 700 square feet of the smaller lot extends out into the aforesaid right of way; that when sellers themselves acquired the property, the deed from their predecessors contained a provision "reserving and excepting" that portion from the smaller lot to be used in common by the owners and occupants of certain enumerated lots.

On April 1, 1954, purchasers wrote to sellers rescinding the contract. Thereafter, sellers made diligent efforts to sell the same property and finally did sell it for the price of $21,675.

The answers filed by sellers and purchasers placed in issue the merchantability of the title to the real property. The court below held that the rescission was warranted since the title was not merchantable and entered judgment in favor of purchasers. Sellers are here on appeal.

In the main, appellants (sellers) contend (1) that the trial court erred in allowing appellees (purchasers) to amend their answer setting forth an additional ground

of rescission, and (2) that it further erred in holding that the right of way easement constituted an encumbrance rendering the seller's title unmerchantable.

It appears from the record that on July 31, 1957, the taking of testimony was completed; that on the day following, with counsel waiving the 48-hour notice, appellees, upon motion, were permitted to amend, over objection, their original answer by adding a new paragraph, designated (d-1), setting forth in substance that appellants did not have and could not deliver merchantable title to the entire property, for the reason either that they did not have title to a strip of land eight feet wide along and within the north boundary, which strip contained more than 700 square feet of the property agreed to be sold under the contract, or else that the same strip of land was encumbered by an easement in favor of others. The original answer referred to the garage and residence encroachments but not specifically to the lack of title to the eight-foot strip. It is to be noted, however, that in paragraph (e) thereof, purchasers did refer to the fact that sellers could not deliver merchantable title to the property as described in the contract. It also appears from the record that in the wake of the amendment aforesaid, sellers moved to reopen the case for further evidence. The court granted the motion and continued the case to a day certain. Approximately five months thereafter, sellers advised the court of their election not to adduce additional evidence. Decision was rendered and judgment entered by the court on March 19, 1958. Obviously, under the foregoing circumstances, sellers were not prejudiced.

It is also clear that the court did not abuse its discretion in allowing the amendment to conform to the evidence. The action of the courdt was in accordance with H. R. C. P., Rule 15(a) and (b). *Moore's Federal Practice*, 2d ed., Vol. 3, § 15.08. The first contention therefore has no merit.

We consider now the issue as to whether sellers were able to convey a merchantable title to the property. The term "merchantable title" is generally defined as being synonymous with "marketable title." Ballentine's Law Dictionary defines the term as "a title free from litigation, palpable defects, and grave doubts, * * *" It signifies a title as to which there is no such doubt, either in law or in fact, as will affect the market value. *Hess* v. *Bowen*, 237 Fed. 510.

In developing the contention on the issue of merchantability of their title, sellers maintain that, inasmuch as the easement or right of way was visible, purchasers must be presumed to have had knowledge of its existence, and that the court below erred in holding that the easement constituted an encumbrance rendering the title unmerchantable. In support thereof, sellers cite only one case, *Waterhouse Trust Company* v. *Freitas*, 33 Haw. 139. In that case, the purchaser urged that the trial court erred in requiring him to accept a deed which contained reservations of a stream easement and the waters thereof, when the contract provided for a warranty deed with full and usual covenants. The stream ran through the property involved and the government had reserved the easement and water rights. The purchaser's own testimony was that he was familiar with the property, having previously appraised the buildings thereon. This court held that the easement in question was open and visible and was known by the purchaser to exist prior to entering into the contract, and that it was to be presumed that the existence of this encumbrance was considered by the parties in fixing the price.

An agreement to deliver a warranty deed with full and usual covenants must be construed in the light of the factual circumstances prevailing in any particular case. As in the *Waterhouse* case, *supra,* where a stream is open

and visible and the purchaser admits his familiarity with the property, he is charged with knowledge not only of the encumbrance but of the fact that the seller could not warrant title to the property including the stream. Under such circumstance, in the absence of evidence that the parties to the transaction intended to warrant title to the extent of including the stream, the purchaser must be presumed to have understood that either a reservation or exception would be made to the title to be warranted.

The case at bar is readily differentiable, for the facts are patently dissimilar. Sellers agreed to sell, "free and clear of encumbrances," a certain improved real property containing approximately 16,788 square feet. Purchasers responded to a newspaper advertisement and visited the premises twice. Neither sellers nor their broker mentioned a word about the discrepancy in the description of the land area and the building and garage encroachments. In need of a home, purchasers signed the contract during the second visit and made a down payment of $3,000 in two installments. About a week later, they received a map from Wright, Harvey and Wright, surveyors, which showed the right of way and encroachments. A witness from the surveying firm testified that the north section of the residence building extended from 1.3 to 1.8 feet into a 16-foot right of way, used in common by other property owners; that abutting this encroaching section of the building was a retaining wall which extended another foot into the right of way; that the 16-foot right of way aforesaid included a strip of land, 8 feet wide, running along the north side of the property and containing a total area of about 700 square feet; and that this strip of land was a part of the total land area of 16,778 square feet. Incidentally, the contract erroneously described the area as 16,788 square feet.

Whether or not, under the "reservation and exception"

of the 8-foot strip appearing in sellers' deed, they acquired an assignable title to the 8-foot strip, we need not decide. The words are often used interchangeably. *Murphy* v. *Sunset Hills Assn.,* 243 Wis. 139, 9 N.W. 2d 613. Regardless of whether title to the strip was "reserved" or "excepted," the fact remains that the area involved could not be used to the full enjoyment of purchasers and thus constituted an encumbrance sufficient to make the title unmerchantable.

Sellers' contention that the property was not unmerchantable because of the visibility of the right of way and encroachments is untenable. Not having been apprised, how were purchasers to know whether the area of 16,788 square feet included or excluded the right of way, or whether the building encroached upon the right of way? There being no evidence to the contrary, it is logical to assume that purchasers relied upon the contract and expected to receive clear title to 16,788 square feet of unencumbered land. *Harder* v. *Lang Realty Company,* 61 Cal. App. 394, 214 Pac. 1017.

It is a well recognized rule, sustained by ample authority, that a contract to convey property, free and clear of encumbrances, is not complied with, where there exists an easement upon the land which precludes the full enjoyment of the premises. Numerous cases have held that even though an easement is comparatively a slight hindrance, yet it constitutes such a burden and impediment against the full enjoyment of the land as to affect merchantability and the purchaser is not obliged to accept the conveyance. 57 A.L.R. 1426.

*Harder* v. *Lang Realty Company, supra,* is a case in point. The contract there called for a lot with a frontage of 25 feet. The court held that the purchaser was not bound to accept one with a frontage of 24 feet. Said the court: "A purchaser is entitled to the quantity of land

for which he has bargained, and, if the vendor is unwilling or unable to give it to him, he is under no obligation to complete the contract." Further said the court: "Nor does the fact, as claimed, that the plaintiff viewed and inspected the premises, and had the lot pointed out to him, preclude him from complaining of a defect in quantity. A vendor cannot escape responsibility by showing that the purchaser might have ascertained that such representations were untrue. Dimensions of land cannot be seen with the eye at a glance, and can only be ascertained with accuracy by scientific measurement. One dealing with an owner of real property may, therefore, assume that the owner knows the true boundaries, and he may rely upon representations to that extent." In *Patterson* v. *Freihofer,* 215 Pa. 47, 64 Atl. 326, the seller stipulated in the contract that "the premises are to be conveyed clear of all easements." The evidence showed two easements consisting of (1) a joint right of way of a width of about 18 inches, one-half of which was on the seller's premises, and the remaining half on adjoining property, said right of way being for common use, and (2) a right in adjoining owners to use certain cesspools opened and maintained partly upon seller's premises and partly upon the property of adjoining owners. The court found in favor of the purchaser, holding:

"The buyer cannot be required to pay for what he did not agree to purchase. The description of the easements alleged is sufficiently explicit. It indicates clearly what they are, where they are, and their extent. This description certainly leaves the plaintiff in no doubt with respect to the defense set up; for, recognizing the easements described, he insists in reply that they were open and visible at the time of purchase, that plaintiff must be presumed to have seen them, and that their existence therefore is no defense to the

action. Whether such reply would be adequate where the covenant is simply a general warranty of title, we need not consider; it certainly fails to meet the case where the covenant is expressed, to convey clear of easements. When one protects himself against an incumbrance by a positive covenant that the property is to be conveyed to him clear of all such incumbrance, he is entitled to the benefit of his contract whether he had knowledge of the existence of the incumbrance or not."

In addition to the numerous cases cited by purchasers in their brief, the following are in accord: *Housing Engineering Company* v. *D. M. Andrew Company,* 184 Md. 290, 40 A. 2d 368; *White* v. *Evans,* 120 Colo. 200, 208 P. 2d 922; *Adams* v. *Henderson,* 168 U.S. 573, 42 L. Ed. 584; *Weis* v. *Binnian,* 178 Ill. 241, 52 N.E. 969; *Mansfield* v. *Wiles,* 221 Mass. 75, 108 N.E. 901; *Remsen* v. *Wingert,* 112 App. Div. 234, 98 N.Y. Supp. 388.

This court is aware of the cases in which very slight structural encroachments, ranging from a fraction of an inch to about two inches, have been held, by application of the *de minimis non curat lex* rule, not to render title unmarketable. Typical is the case of *Sinclair* v. *Weber,* 204 Md. 324, 104 A. 2d 561, where the encroachment, being so slight as to be "hardly noticeable," was held not to affect merchantability. But even there, the court said: "A marketable title is a title which is free from encumbrances and any reasonable doubt as to its validity, and such as a reasonably intelligent person, who is well informed as to the facts and their legal bearings, and ready and willing to perform his contract, would be willing to accept in the exercise of ordinary business prudence. Accordingly a marketable title must be so far free from defects as to enable the purchaser not only to hold the land in peace but also, if he wishes to sell it, to be reason-

ably sure that no flaw will appear to disturb its market value."

Sellers argue that by electing to rescind on the ground of encroachment of the building upon the easement area, purchasers waived any claim based on the existence of the easement. This argument is not well taken. The sellers expressly agreed to convey title "free and clear of encumbrances" and to release purchasers from all obligations in the event that the title "shall not prove merchantable." Without making any effort to perfect the title, sellers resold the property at a much lower price. Accordingly, the cases cited have no bearing.

In the instant case the evidence shows that the over-all encroachment of the building and the retaining wall measures 2.3 to 2.8 feet. Such condition, it is to be noted as a practical matter, accounted for purchasers' failure to secure a mortgage loan and a title insurance on the property. More fatal than that was the inability of sellers to convey, free and clear of encumbrances, the right of way strip of 700 square feet, which *pro tanto* diminished the 16,788 square feet of land agreed to be sold. The effect of the encumbrances upon the merchantability of sellers' title was inevitable.

Judgment is affirmed.

*D. N. Ingman* (also on the opening brief, but no reply brief) for appellants.

*Frank D. Gibson, Jr.* (*Henshaw, Conroy and Hamilton* with him on the brief) for appellees Howard E. Ball and Ruth Irene Ball.

*Arthur H. Spitzer* (on the brief, but no oral argument) for appellees Howard A. Reynolds and Sigurd E. Johnson.