KIPAHULU INVESTMENT COMPANY, a Hawaii general partnership, Plaintiff-Appellant, *v.* SELTZER PARTNERSHIP, a Pennsylvania general partnership, ISABELLE SELTZER FLECK and DORIS SELTZER BARROW, Defendants and Third-Party Plaintiffs-Appellees, *v.* W. DUDLEY CHILD, JR., GLENN M. LOVEJOY, CLYDE D. DORAN, ROBERT N. HERKES, JAMES H. CASE, JAMES W. BOYLE, SAMUEL A. COOKE, CHARLES M. COOKE IV, LARRY M. JOHNSON and AMERICAN TRUST COMPANY OF HAWAII, INC., as the Trustee under Trust Agreement of G. L. Thoele Co., Ltd., Pension Trust, Third-Party Defendants-Appellants

NO. 8621

(CIVIL NO. 3764)

DECEMBER 9, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Plaintiff Kipahulu Investment Company (Kipahulu), a Hawaii general partnership, appeals the judgment denying its claim against defendants Seltzer Partnership (Seltzer), a Pennsylvania general partnership, and its partners for damages for breach of a land sale contract. Kipahulu and its partners appeal the $34,552.04 judgment against them in favor of Seltzer and its partners for breach of the same contract. We affirm.

In July 1973 Kipahulu purchased two parcels of land in Kipahulu, Maui: parcel 8-B-1 (217.83 acres) and a forest reserve parcel (140 acres) (subject parcels). Notwithstanding breaks in the chains of record title of Kipahulu, Title Guaranty of Hawaii, Inc. (Title Guaranty), as agent, issued a clean (no title defects) policy of title insurance from Title Insurance and Trust Company (Title Insurance) to Kipahulu's mortgagee upon Kipahulu's agreeing to pursue quiet title proceedings and to indemnify and hold Title Guaranty and Title Insurance harmless from any claims against the policy.

In January 1977 Kipahulu informed Allen Stack (Stack), counsel for Seltzer, a prospective buyer of the subject parcels, that there were some breaks in the chains of record title. However, Kipahulu gave Stack a copy of Title Insurance's clean title insurance policy in favor of Kipahulu's mortgagee without telling him of Kipahulu's agreements to indemnify and quiet title.

On November 25, 1977 Seltzer offered to purchase the subject parcels for $1,200,000. Kipahulu accepted the offer on December 1, 1977. The agreement required that Kipahulu

convey marketable title on or before 2:00 p.m., on January 3, 1978. About December 20, 1977 Stack found out about the seriousness of the defects in Kipahulu's record title and of Kipahulu's promises to indemnify and quiet title. Thereupon, Kipahulu advised Seltzer of its willingness at its expense to bring, in Seltzer's name, an action to quiet title. Concluding that such an action would be bad public relations, Seltzer declined the offer. On December 29, 1977, at Kipahulu's request, Title Guaranty released Kipahulu from its obligation to pursue quiet title proceedings.

On January 3, 1978 Seltzer refused to close. On February 14, 1978 Kipahulu commenced an action to quiet title to parcel 8-B-1. The forest reserve parcel was not included because it had not been legally subdivided from adjoining forest reserve land, and although Seltzer had not waived the parcel's title defects, it had waived such lack of subdivision. As of the April 10, 1978 return date in the action, the only substantial claim was the state's claim to a jeep trail easement across parcel 8-B-1. The state filed a disclaimer on October 12, 1978. A judgment quieting title in Kipahulu was filed on November 6, 1978.

On June 13, 1978 Kipahulu sued Seltzer and its two partners seeking specific performance or damages for breach of the agreement. Seltzer and its two partners counterclaimed against Kipahulu and filed a third-party complaint against Kipahulu's partners for damages for breach of the agreement. Subsequently, Kipahulu dismissed its claim for specific performance. The trial was jury waived.

In their appeal Kipahulu and its partners assert that the trial court made the following errors:

I. The trial court erred in concluding that under the agreement title insurance did not satisfy the requirements of marketable title.

II. The trial court erred in concluding that the breaks in Kipahulu's chains of record title to parcel 8-B-1 made Kipahulu's title unmarketable. It also erred in concluding that Kipahulu did not prove that it had marketable title by adverse possession.

III. The trial court erred in concluding that time was of the essence under the agreement. Since time was not of the essence,

(1) Kipahulu had a reasonable time within which to perform; (2) the lack of substantial claims against parcel 8-B-1 as of the April 10, 1978 return date in the quiet title action proved martketability by adverse possession as of that date; (3) that date was within a reasonable time; and (4) consequently, Seltzer was required to close on April 10, 1978.

I.

Under the agreement, Kipahulu was required to deliver to Seltzer at closing (1) "a warranty deed conveying title to the property in fee simple absolute, free and clear of all encumbrances, except as specifically set forth in the property description attached" and "further" (2) "an owner's extended coverage policy of title insurance in the amount of the full purchase price . . . insuring [Seltzer] to have marketable title to the property[.]"

Marketable title and insurable title are not generally synonymous. R. Powell & P. Rohan, *Powell on Real Property* § 1044 (1982). *See Hebb v. Severson,* 32 Wash. 2d 159, 168, 201 P.2d 156, 160 (1948). Here, the lower court concluded, as do we, that under the agreement Seltzer was entitled to both marketable title and title insurance and the existence of title insurance did not satisfy the requirement of marketable title. *See New York Investors, Inc. v. Manhattan Beach Bathing Parks Corp.,* 229 A.D. 593, 243 N.Y.S. 548 (1930), *aff'd* 256 N.Y. 162, 176 N.E. 6 (1931).

II.

"A marketable title is a title which is free from encumbrances and any reasonable doubt as to its validity, and such as a reasonably intelligent person, who is well informed as to the facts and their legal bearings, and ready and willing to perform his contract, would be willing to accept in the exercise of ordinary business prudence." *Clarke v. Title Guaranty Co.,* 44 Haw. 261, 269, 353 P.2d 1002, 1007 (1960) (quoting *Sinclair v. Weber,* 204 Md. 324, 104 A.2d 561, 565 (1954)).

The lower court found that "the defects or breaks in title to parcel 8-B-1 . . . constituted a rational or substantial doubt

which caused an uncertainty to the title of said parcel" and "constituted a reasonable doubt as to the marketability of said title[.]" Those findings of fact, which are mislabelled as conclusions of law, are not clearly erroneous and provide adequate support for the lower court's conclusion of law that Kipahulu's record title was not marketable. In fact, one of Kipahulu's managing general partners testified that its "title was essentially based upon adverse possession." Consequently, Kipahulu's real contention is that notwithstanding the defects in its record title, it proved that it had marketable title through adverse possession.

The level of Kipahulu's burden to prove that notwithstanding the lack of a judgment quieting title it had marketable title by adverse possession is debatable. *See* 77 Am. Jur. 2d, *Vendor and Purchaser,* § 178 (1975). We need not decide that question because we hold that under all possibly applicable standards Kipahulu failed to meet its burden.

Adverse possession involves (1) intent, (2) fact, and (3) notice. *In re Keamo,* 3 Haw. App. 360, 650 P.2d 1365 (1982). With respect to (3), if the person claiming adverse possession knows or has "reason to suspect" that a cotenancy exists, the statutory period does not begin to run against his cotenant until the cotenant has actual notice that he is claiming adversely to the cotenant's title or until he makes "a good faith, reasonable effort to notify" his cotenant that he is claiming adversely to his cotenant's title. *City & County v. Bennett,* 57 Haw. 195, 209, 552 P.2d 1380, 1390 (1976).

Kipahulu's record title to parcel 8-B-1 derives from thirteen separate chains of title. Seltzer's expert testified that eleven of the chains were broken and in nine Kipahulu had record title to less than a 100% interest. Its record title to the forest reserve parcel derived from one of the eleven but not one of the nine. The breaks in Kipahulu's chains of record title provided "reason to suspect" the existence of one or more cotenancies. The fact that Kipahulu had assured itself that it and its predecessors in interest had occupied the land for at least 50 years and there were no known claimants nor any likelihood of potential claimants to the property including possible tenants in common does not satisfy *Bennett's* notice requirements. *See Hana*

*Ranch, Inc. v. Kanakaole,* 1 Haw. App. 573, 578-580, 623 P.2d 885, 888-889 (1981) (Hana Ranch apparently assured itself that there were no known claimants nor any likelihood of potential claimants, but at the quiet title action claimant Flores asserted a serious claim to a fractional cotenancy interest.) *Bennett* requires Kipahulu and its predecessors to have made "a good faith, reasonable effort to notify the [reasonably suspected] cotenants" that Kipahulu and its predecessors were claiming adversely to the cotenants' title. There is no evidence in the record of such effort by Kipahulu and its predecessors in interest. Kipahulu failed to prove compliance with the *Bennett* requirements for adverse possession against reasonably suspected cotenants and, consequently, did not meet its burden of proving marketable title by adverse possession.

III.

Time is of the essence under an agreement if made so expressly or where such intention is clearly manifested from the agreement as a whole, construed in the light of the surrounding facts. *Lum v. Stevens, Adm'r'x Soffra Est.,* 42 Haw. 286 (1958). Although *Lum v. Stevens* was an action in equity, we deem its rule as to time equally applicable in actions at law. *See* 17 Am. Jur. 2d *Contracts* § 332 (1964).

Here, the agreement stated in relevant part:

5. *Closing.* The closing of this transaction shall occur on or before January 3, 1978, in Honolulu, Hawaii, at the offices of Carlsmith, Carlsmith, Wichman & Case, at 2:00 p.m.

*    *    *

8. *Construction of Offer and Acceptance.*

*    *    *

(f) *Time.* Time is of the essence of this offer.

The agreement did not expressly make time of the essence as to its performance. However, one of the lower court's conclusions of law was that "[t]ime was of the essence of the letter agreement."

We have stated that "[t]he construction and the legal effect to be given a contract is a question of law. * * * Consequently, an appellate court is not bound by a trial court's construction of a contract based solely upon the terms of a written instrument without the aid of extrinsic evidence. * * * In such circumstances, the appellate court must make its own independent determination." *American Security Bank v. Read Realty, Inc.,* 1 Haw. App. 161, 165-66, 616 P.2d 237, 241 (1980) (citations omitted).

Here the question is, what is the standard where the trial court's construction is based upon the terms of a written instrument with the aid of extrinsic evidence? The lower court's decision in such a case mixes fact and law. *See* 5A Moore's Federal Practice ¶ 52.05[1] (1982); Wright & Miller, Federal Practice and Procedure: *Civil* § 2589 (1971).

Generally, the lower court's findings of fact are subject to Hawaii Rules of Civil Procedure (HRCP), Rule 52(a)'s clearly erroneous standard of review and its conclusions of law from those findings are subject to the right/wrong standard of review explained in *Davis v. Davis,* 3 Haw. App. 501, 506, 653 P.2d 1167, 1171, n. 5 (1982).

When the lower court is deciding what the extrinsic or surrounding facts are, it is making findings of fact which we review under the clearly erroneous standard. Rule 52, HRCP. When it is construing the agreement as a whole in light of those surrounding facts, it is making conclusions of law which we review under the right/wrong standard. *See State v. Miller,* 4 Haw. App. 603, 671 P.2d 1037 (1983).

Although the lower court did not specifically find these facts, the extrinsic evidence clearly indicates that the parties specifically negotiated the closing date and each was anxious to close the transaction on or before that date. Thus, the lower court's implicit finding of fact that the parties intended time to be of the essence under the agreement is not clearly erroneous and its conclusion of law that "[t]ime was of the essence of the letter agreement" is right.

The fact that after January 3, 1978 Seltzer continued to negotiate for the acquisition of the subject parcels did not constitute a waiver of its right to insist on performance of the

November 25, 1977 agreement on January 3, 1978. When Kipahulu was unable to perform its obligations under the November 25, 1977 agreement as required on January 3, 1978, Seltzer was entitled to lawfully terminate that agreement without prejudice to its right to negotiate a new agreement containing different terms.

This is an action at law for damages, not an action for equitable relief. Consequently, *Jenkins v. Wise,* 58 Haw. 592, 574 P.2d 1337 (1978), as clarified by *Kaiman Realty, Inc. v. Carmichael,* 2 Haw. App. 499, 634 P.2d 603 (1981), *rev'd in part,* 65 Haw. 637, 655 P.2d 872 (1982), *supp'd on reconsideration,* 66 Haw. 103, 659 P.2d 63 (1983), and their progeny are inapplicable.

Affirmed.

*Terence J. O'Toole* (*Jerold T. Matayoshi* with him on the briefs; *Carlsmith, Carlsmith, Wichman & Case* of counsel) for plaintiff-appellant and third-party defendants-appellants.

*Wesley W. Ichida* (*William W. L. Yuen* with him on the briefs; *Case, Kay & Lynch* of counsel) for defendants, third-party plaintiffs-appellees.