**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-24-0000785**
**29-MAY-2026**
**10:19 AM**
**Dkt. 74 MO**

NO. CAAP-24-0000785

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

McCORMICK 106, LLC, Plaintiff-Appellant,
v.
NANCY P. YOUNG, aka PATSY P. YOUNG; JACK B. YOUNG;
ALOIAU, INC.; RIDGEWAY RENTALS LIMITED LIABILITY PARTNERSHIP,
Defendants-Appellees, and
DOES 1 through 20, inclusive, Defendants-Appellees.

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5CC121000191)

MEMORANDUM OPINION
(By: Nakasone, Chief Judge, Leonard and McCullen, JJ.)

Plaintiff-Appellant **McCormick** 106, LLC appeals from
the Circuit Court of the Fifth Circuit's August 20, 2024 "Order
Denying Plaintiff's Motion to Enter Agreed Consent Judgment of
Foreclosure" (**Denial Order**) and November 6, 2024 Final Judgment.[1]

On appeal, McCormick contends the circuit court erred
and abused its discretion by not entering the Consent Judgment

---

[1] The Honorable Kathleen N.A. Watanabe presided.

of foreclosure, which was McCormick's express remedy under the Settlement Agreement.  We affirm.

## I.    BACKGROUND

In May 2007, Defendants-Appellees Nancy P. Young, Jack B. Young, and Ridgeway Rentals, LLLP (collectively, **Ridgeway**) received a $650,000.00 loan from McCormick's predecessor-in-interest that was secured by a mortgage on real property at 4597 Lehua Street, Kapaʻa, Kauaʻi (**Property**).[2] Ridgeway subsequently defaulted on the loan, and in June 2012, McCormick's predecessor-in-interest filed a complaint in the circuit court to foreclose on its mortgage on the Property. After more than a decade of pre-trial litigation, attempted settlements, and continuances, a bench trial was set for May 2023.

On the eve of trial, McCormick and Ridgeway entered a Settlement Agreement.  Under the terms of the agreement, McCormick agreed to a $762,500.00 **Short Payoff** of the outstanding debt in exchange for a release of the mortgage. Additionally, Ridgeway was also required to make a $100,000.00 non-refundable deposit into escrow (**Escrow Deposit**) and "remit all net rental payments" received from the Property, together

---

[2]  The Property appears to be a commercial rental property from which Ridgeway Rentals generates income for Units A and C, while Ridgeway occupies Unit B.  It also appears that the foreclosure sought is limited to the improvements on the Property, not the Property itself, which is leased from Defendant Aloiau, Inc., who did not participate on appeal.

with the governing leases, from January 1 through receipt of the Short Payoff (**Rents**).

By the terms of the agreement, which recited that **"TIME IS OF THE ESSENCE,"** if Ridgeway failed to pay the Short Payoff, Escrow Deposit, or Rents by July 27, 2023 (**Payment Date**), Ridgeway agreed that McCormick "may immediately proceed with foreclosure of the Property via:  (1) the Consent Judgment of Foreclosure attached to this [Settlement] Agreement as Exhibit '1' (**'Consent Judgment'**); and/or (2) the Deed-[i]n-Lieu of Foreclosure ('Deed in Lieu') attached to this [Settlement] Agreement as Exhibit '2.'"  The Settlement Agreement further provided that McCormick "shall have the option of accepting the Deed in Lieu, proceeding with the foreclosure sale of the Property via Consent Judgment, or both."

Fifty-four days after the Payment Date had passed, McCormick moved to enforce the Settlement Agreement on the basis that Ridgeway failed to provide the governing leases and remit all Rents as required under the Settlement Agreement.  McCormick conceded that Ridgeway "tendered $14,408.28 to [McCormick] advising that this amount constituted the four monthly rents owed for the Property from January 2023 to April 2023,"[3] but

---

[3]  When Ridgeway made its $14,408.28 payment in May 2023, it explained the amount as follows:  ($2,200.00 (Unit A) + $3,500.00 (Unit C) - $2,097.93 (Ground Lease)) x 4 months (January - April 2023) = $3,602.07 x 4 = $14,408.28.

argued that because Ridgeway failed to provide the governing leases, McCormick "cannot verify that [Ridgeway] tendered the correct sums owed for the first four rental payments owed." McCormick further asserted that it was owed Rents for May, June, July, August, and September 2023.

The circuit court entered a written order granting McCormick's motion, ordering Ridgeway to (1) produce the governing leases and (2) pay all Rents owed within ten days of entry of the order.

Ridgeway then moved to enforce the Settlement Agreement, on the basis that it complied with the circuit court's order by remitting $11,409.00[4] in Rents on November 10, 2023, and that it had provided the governing leases by email on November 3, 2023, but that McCormick had not released the mortgage.

McCormick opposed, arguing that Rents continued to accrue. McCormick calculated the outstanding amount, after subtracting the two rent payments received, to be $30,715.70 for the fourteen months of Rents owed as of February 2024.

Over seven months after the Payment Date had passed, McCormick renewed its motion to enforce the Settlement Agreement and to enforce the circuit court's prior order. McCormick

---

[4] Nothing in the record purports to explain with any specificity the basis of the $11,409.00 payment in November 2023, apart from Ridgeway's belief that "that was the amount owed for the [R]ents."

4

argued that it was entitled to enforce the Settlement Agreement by "enter[ing] the agreed confessed judgment" in McCormick's favor. In its renewed motion, McCormick asserted Ridgeway owed the same $30,715.70 for the fourteen months of Rents owed as of February 2024 as asserted in its opposition to Ridgeway's motion.

A hearing was held on the cross-motions. When asked by the circuit court if McCormick would release the mortgage if Ridgeway paid the Short Payoff balance and the outstanding Rents, McCormick's attorney stated: "Yes. If your Honor ordered them to pay those two amounts and to release the lien, then of course my client would comply with your Honor's order." The circuit court orally granted McCormick's renewed motion and denied Ridgeway's. The circuit court ordered Ridgeway to pay McCormick $45,124.70, including the $14,409.00 balance on the Short Payoff and $30,715.70 in outstanding Rents.

In so doing, the circuit court explained, "Clearly, the Court is not entertaining the alternative request which is the consent judgment of foreclosure given what has been paid, but it's also clear to the Court that additional payments are still owing to the plaintiff." (Emphasis added.) McCormick made no objection to the ruling.

The circuit court entered its written order denying Ridgeway's motion to enforce and granting McCormick's motion, ordering Ridgeway to pay "$45,124.70 in [R]ents owed under the

Settlement Agreement by 4:30 p.m. on May 10, 2024," and awarding attorneys' fees. The $45,124.70 ordered by the circuit court included both the $14,409.00 balance on the Short Payoff and the $30,715.70 in outstanding Rents.

Ridgeway did not comply with the order. Instead, Ridgeway moved for reconsideration, which the circuit court denied.

On June 24, 2024, McCormick filed a "Motion to Enter Agreed Consent Judgment of Foreclosure," arguing that Ridgeway's continued failure to comply with the circuit court's orders and the terms of the Settlement Agreement warranted entry of the Consent Judgment.

Ridgeway opposed, asserting that it had placed the required $45,124.70 in escrow on June 20, 2024, to be released to McCormick once release of the mortgage was placed in escrow. Ridgeway further argued that entering the Consent Judgment after McCormick had received $773,908.28 in settlement funds, with an additional $45,124.70 pending in escrow, would be inequitable.[5] On July 30, 2024, a hearing was held on the "Motion to Enter Agreed Consent Judgment of Foreclosure." At the hearing, Ridgeway's attorney explained that Ridgeway was ready and

---

[5] $648,091.00 (Short Payoff payment) + $100,000.00 (Escrow Deposit) + $14,408.28 (May 2023 payment) + $11,409.00 (November 2023 payment) = $773,908.28. Including the ordered $45,124.70 then pending in escrow, Ridgeway would have - and ultimately have - paid a total of $819,032.98 toward the Settlement Agreement.

willing to pay the outstanding balance on the Settlement Agreement and had the $45,124.70 in escrow pending release of the mortgage. McCormick's attorney argued that was not sufficient because "[i]t's been over a year and we still don't have full compliance" with the Settlement Agreement, which was for "approximately half" of what was owed on the loan and because the parties had agreed that if payment was not timely, "a consent judgment of foreclosure should be entered, and it is my client's position that given the numerous breaches of the agreement, that that is the correct result as agreed to by the parties at this point in time."

McCormick further argued that it was prejudiced by the delay in payment:

> Well, if they had received the full money a year ago or so, then we would have been done -- they could have moved on. If they -- they can do whatever they want with the money. They could invest it. They could have had interest on it. They could have made money. They wouldn't have had to pay me. I understand a fee award may compensate them for some of that, but this was the agreement of the parties, your Honor, that if they did not comply and they repeatedly did not comply, that this was the remedy for the plaintiff.

When the circuit court noted that keeping the payments already made toward the Settlement Agreement and the foreclosing on the property "sounds like, for lack of a better way of saying it, a windfall," McCormick argued "it's not a windfall in the context of the agreement where this is a rental property." McCormick explained,

> Plaintiff's position, your Honor, is that the agreement provided that that was the remedy for the plaintiff in the event the defendants breached, and the

7

> reason we did it was to ensure timely compliance. And normally you would think that would motivate timely compliance, but it didn't. It hasn't for over a year. And so instead, we're now asking for the consent judgment of foreclosure.

McCormick further noted that it "moved to enforce several times without seeking a more severe remedy," but because Ridgeway continued to violate the circuit court's orders, "enough is enough."

On August 20, 2024, the circuit court entered its Denial Order. The circuit court ordered Ridgeway to pay McCormick the outstanding $45,124.70 within seven days of the order and McCormick to release the mortgage within seven days of the payment. The circuit court also awarded attorneys' fees in favor of McCormick. Final Judgment was entered November 6, 2024. The circuit court later ordered the Clerk of the Court to execute a release of mortgage.

Accordingly, at this time, it appears that Ridgeway has paid all sums ordered by the circuit court under the Settlement Agreement, and McCormick has released its mortgage.

## II. DISCUSSION

On appeal, McCormick asserts that, under the terms of the Settlement Agreement, it is entitled to foreclose on the Property because Ridgeway failed to timely pay the full Short Payoff and Rents owed as required by the Settlement Agreement's time-is-of-the-essence clause. Because it is uncontested that Ridgeway breached the Settlement Agreement, McCormick argues,

8

the circuit court erred by not giving effect to the Settlement Agreement's express terms by entering the Consent Judgment.

Neither party contests the existence, validity, or enforceability of the Settlement Agreement.  Likewise, both parties acknowledge that Ridgeway breached the terms of the Settlement Agreement and failed to comply with two separate orders by the circuit court.

Ridgeway argues that it would be inequitable to enforce the time-is-of-the-essence clause under the circumstances of this case because it had substantially complied with the terms of the contract and enforcement would result in forfeiture of its interest in the Property.

Hawaiʻi courts have long expressed a strong public policy in favor of enforcing settlement agreements.  State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawaiʻi 315, 323, 978 P.2d 753, 761 (1999).  As a species of contract, settlement agreements are subject to ordinary principles of contract law. Public Access Trails Hawaiʻi v. Haleakalā Ranch Co., 153 Hawaiʻi 1, 26, 526 P.3d 526, 551 (2023).

We review the grant or denial of a motion to enforce a settlement agreement de novo.  McKenna v. Ass'n of Apartment Owners of Elima Lani, 148 Hawaiʻi 233, 239, 470 P.3d 1110, 1116 (2020).

"Time is of the essence under an agreement if made so expressly or where such intention is clearly manifested from the agreement as a whole, construed in the light of the surrounding facts," in actions in law and equity. Kipahulu Inv. Co. v. Seltzer P'ship, 4 Haw. App. 625, 630, 675 P.2d 778, 782 (App. 1983). A time-is-of-the-essence clause "will not foreclose equitable relief where, absent gross negligence or bad faith conduct of the [defaulting party], forfeiture would be harsh and unreasonable." PR Pension Fund v. Nakada, 8 Haw. App. 480, 488, 809 P.2d 1139, 1144 (App. 1991) (quoting Kaiman Realty Inc. v. Carmichael, 65 Haw. 637, 640, 655 P.2d 872, 874 (1982), aff'd on reconsideration, 66 Haw. 103, 659 P.2d 63 (1983) (affirming Jenkins v. Wise, 58 Haw. 592, 574 P.2d 1337 (1978)).

As the Hawaiʻi Supreme Court explained in Jenkins, "Equity . . . abhors forfeitures and where no injustice would thereby result to the injured party, equity will generally favor compensation rather than forfeiture against the offending party." 58 Haw. at 597, 574 P.2d at 1341. This is because "[t]he penalty of forfeiture is designed as a mere security, and if the vendor obtains his money or his damages, he will have received the full benefit of his bargain." Id.

The Jenkins court further explained that "whether and to what extent relief should be granted rests in the sound discretion of the trial court, and a key factor in its

determination is whether forfeiture would be harsh and unreasonable under the circumstances." Id. at 597-98, 574 P.2d at 1341 (citations omitted). The Jenkins court provided a non-exhaustive list of relevant factors when considering the equities of forfeiture:

> The amount already paid in relation to the total purchase price; the amount and length of the default; the reasons for the delay; the nature and extent of the improvements, if any, made upon the premises by the vendee in possession; the expenditures incurred by the purchasers in good faith reliance upon the agreement of sale; the value of the land as security for the unpaid balance of the purchase price; and the conduct and equities of the parties are among the considerations in determining whether a forfeiture would be harsh and unreasonable under the circumstances.

Id. at 598 n.3, 574 P.2d at 1341 n.3.

Even where the parties have stipulated that time is of the essence, as the Settlement Agreement does here, "a court of equity may, nevertheless, intervene" "[w]here the forfeiture is disproportionately large" and other circumstances indicate relief is warranted. Id. (quoting Rothenberg v. Follman, 172 N.W.2d 845, 850 (Mich. Ct. App. 1969)).

Here, the record shows that at the time of entry of the instant order, Ridgeway had already paid $773,908.28 under the Settlement Agreement and had placed the outstanding $45,124.70 into escrow. That outstanding balance appears to have resulted from Ridgeway's attorney mistakenly applying the $14,408.28 payment toward both the Rents and the Short Payoff.

And McCormick acknowledges that it made no effort to inform Ridgeway of this mistake. In any event, all amounts owed under the Settlement Agreement have now been paid and the mortgage has been released.

Although it is undisputed that Ridgeway failed to comply with two separate orders from the circuit court and did not fully comply with the circuit court's orders until after entry of a third order, McCormick has not shown that meaningful prejudice or injury resulted from Ridgeway's delay. At the July 30, 2024 hearing, McCormick only cited speculative profits that it may have earned through investment and the need for further litigation as evidence of prejudice.

The circuit court denied the motion for the Consent Judgment to avoid the circumstances of McCormick retaining both the payments and foreclosing on the property, which it characterized as a "windfall." Given the amount already paid by Ridgeway under the Settlement Agreement and the outstanding balance relative to the potential value of the Property,[6] the circuit court did not abuse its discretion when it determined

---

[6] The record purports to show that the lot on which the Property sits was assessed at $1,471,100.00, although it is unclear when that assessment was made. Further, that assessment appears to be for the lot and not the improvements thereon, which are at issue here. At the time of seeking a supersedeas bond, Ridgeway asserted that an interested buyer was prepared to pay $2,100,000.00 for the Property, but it appears that that offer has since disappeared. It is unclear if the offer was for the improvements or if it included the underlying lot as well.

that entering the Consent Judgment would result in a disproportionately large forfeiture under the circumstances.

### III. CONCLUSION

Based on the foregoing, we affirm the circuit court's August 20, 2024 Denial Order and November 6, 2024 Final Judgment.

DATED:  Honolulu, Hawaiʻi, May 29, 2026.

On the briefs:

Patricia J. McHenry
(Cades Schutte) and
Ernest P. Wagner,
for Plaintiff-Appellant.

Keith M. Kiuchi,
for Defendants-Appellees.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge