335 F.Supp. 1299 (1971)
Fred P. KREIS, Jr., Plaintiff,
v.
MATES INVESTMENT FUND, INC., a Corporation, and Frederick S. Mates, Defendants.
No. 70 C 67(4).
United States District Court, E. D. Missouri, E. D.
December 10, 1971.
*1300 Lashly, Caruthers, Rava, Hyndman & Rutherford, St. Louis, Mo., for plaintiff.
D. Jeff Lance, Cook, Murphy, Lance & Mayer, St. Louis, Mo., for defendants.

MEMORANDUM
WANGELIN, District Judge.
Plaintiff instituted this action to rescind the sale to him of shares of defendant Mates Investment Fund, Inc. (hereinafter referred to as "Fund") on the grounds that the Fund had not complied with the registration provision of the Missouri Uniform Securities Act, Chapter 409 RSMo 1969, (hereinafter referred to as the "Act"). The cause is submitted for a determination of the merits upon a Stipulation of Facts and briefs.
Plaintiff is a citizen of Missouri. The Fund is a Delaware corporation with its principal place of business in New York. Frederic S. Mates is the president, a *1301 director, and the controlling officer of the Fund, and the sole shareholder of Mates Management Company, Inc. This Court has jurisdiction under 28 U.S.C. § 1332 and venue under 28 U.S.C. § 1391.
The Fund is an "open end" investment company registered under the Investment Company Act of 1940, and engaged in the business of operating an investment fund and selling shares to the public. The Fund is duly registered in the Office of the Attorney General of the State of New York and the Fund, at all relevant times, was entitled under New York laws to accept offers for the purchase of its shares in New York.
The Fund filed a Uniform Consent to Service of Process dated June 10, 1968, with the Office of the Secretary of State of Missouri, and plaintiff has complied with the Missouri Securities Act with regard to service of process.
Shares of defendant Fund are not registered and have never been registered pursuant to the Missouri Securities Act.
The plaintiff first learned of the existence of the Fund from an article published in Barron's National Business and Financial Weekly, in the issue dated June 3, 1968.
Barron's National Business and Financial Weekly was, on June 3, 1968, published and printed entirely without the State of Missouri. On June 3, 1968, and for twelve (12) months prior thereto its circulation in Missouri was less than one-third ( 1/3 ) of its total circulation. (See, Section 409.415(e) RSMo 1969).
Armon Glenn, the writer of the article had no stock interest in the Fund or in any affiliate of defendant, Frederic S. Mates before, at the time of, or subsequent to the publication of said article. No fees, salaries, wages or commissions have ever been paid by either defendant or any affiliate of either defendant, to Armon Glenn. Armon Glenn was not an agent, of any type, for the Fund or defendant Frederic S. Mates at any time relevant herein.
Plaintiff's purchase of Fund shares was initiated as follows: plaintiff wrote a letter addressed to the Fund, which letter in substance referred to an enclosed personal check of plaintiff for Twenty Thousand Dollars ($20,000.00) and requested the Fund to sell to plaintiff the number of shares purchasable for Twenty Thousand Dollars ($20,000.00). Such letter was dated and deposited in the mail in the State of Missouri on or about June 4, 1968. Plaintiff obtained the address of the Fund from the article in Barron's.
The Fund received the offer of plaintiff to purchase Fund shares on June 5, 1968, in its office in New York, at 10:15 A.M. The defendants cashed plaintiff's check and after price adjustments retained Nineteen Thousand Five Hundred Forty One Dollars and Two Cents ($19,541.02) and issued two thousand one hundred seventy eight (2,178) shares.
On June 6, 1968, the Fund posted the sale to plaintiff on its books. On or after June 7, 1968, the Fund physically delivered plaintiff's check to the custodian, Bank of New York, and on or after June 7, 1968, deposited in the mail confirmation #10256, addressed to the plaintiff. Computation of the Fund's net asset value on June 6, 1968, included an entry reflecting the plaintiff's purchase of Fund shares.
Before mailing the letter to the Fund offering to purchase Fund shares, plaintiff did not in any manner communicate with any person representing the Fund, and did not receive any communication of any kind from anyone representing or employed by the Fund. Plaintiff did not receive a prospectus of the Fund prior to mailing the letter of June 4, 1968, to the Fund, but did receive a prospectus prior to the delivery of the 2,178 shares.
Plaintiff, prior to his letter to the Fund requesting rescission (described below) received no written communication from the Fund directed to him personally (as opposed to printed reports sent to shareholders generally) except for:
(i) a confirmation, numbered #10256, reflecting the sale to plaintiff of two thousand one hundred seventy eight (2,178) shares.

*1302 (ii) a form letter from the Fund, declining plaintiff's request to purchase additional shares of the Fund, for the stated reason that the Fund's shares were not registered for sale in the State of Missouri. Said statement by the Fund did not constitute an admission by the Fund that unsolicited orders from Missouri could not be accepted, since the Fund's position was that it could accept such orders as a matter of law. The letter was received by plaintiff on or about September 3, 1968.
(iii) an annual report designated "First Annual Report of the MATES INVESTMENT FUND" was received in May of 1969 prior to May 19, 1969.
The two thousand one hundred seventy eight (2,178) shares of the Fund originally purchased by plaintiff were mailed by defendants to plaintiff by deposit thereof in the United States Mail in New York, New York, addressed to a postal address within the State of Missouri.
The confirmation of said sale was also mailed by defendants to plaintiff at a postal address within the State of Missouri.
Plaintiff is presently the owner of three thousand one hundred thirty (3,130) shares of the Fund. Of the foregoing, nine hundred fifty two (952) shares are owned by virtue of a stock dividend credited by the Fund to plaintiff on July 3, 1969, out of capital gains, in lieu of a cash dividend, at the net asset value of Five Dollars and Forty Four Cents ($5.44) per share, or a total dividend in shares of Five Thousand One Hundred Seventy Eight Dollars and Eighty Eight Cents ($5,178.88).
Plaintiff demanded that the Fund rescind his purchase of Fund shares by letter dated May 19, 1969, which letter was deposited in the mail in the State of Missouri on or about such date and received by defendants in the regular course of the mails; the Fund refused to rescind the purchase. The reason plaintiff sought rescission was the form letter received by plaintiff on September 3, 1968, and footnotes contained in the May, 1969 annual report of the Fund which stated, in effect, that persons holding Fund shares in states where such shares were not qualified to be sold may have a right to rescind their purchases, but such rescission was unlikely in the opinion of management, because the price of the Fund shares on December 31, 1968, exceeded the price paid for all shares sold.
Plaintiff did not tender his shares to the Fund for redemption at any time prior to commencement to this action. "Redemption" refers to the repurchase by the Fund, in accordance with the prospectus received by plaintiff, of the Fund shares at a price equal to the net asset value of Fund shares on the date a redemption request is received by the Fund. "Redemption" does not refer to "rescission" which, refers to the legal right claimed by plaintiff to tender his shares to the Fund in return for his original purchase price (plus interest and attorneys' fees) regardless of the present net asset value of such shares.
Plaintiff has tendered the return of the shares of the Fund and has demanded the return of the purchase price plus interest and attorneys' fees within the provision of the Missouri Securities Act.
The facts as outlined above present issues of first impression under the Uniform Securities Act and the Missouri Securities Act, Chapter 409 RSMo 1969: a) the liability of the Fund with respect to the sale to plaintiff of the original 2,178 shares; b) the liability of the Fund with respect to the stock dividend of 952 shares; and c) the liability of Frederic S. Mates by reason of his being the controlling officer and director of the Fund.
Section 409.301 RSMo 1969 states:
"It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 409.402."
*1303 See generally, H. M. Bateman, "The Missouri Uniform Securities Act", 34 Mo. L.Rev. 463 (1969); J. C. Logan, "Blue Skyways and Byways of Missouri", 25-26 J. of Mo.Bar (September, 1969 through June 1970); L. R. Mills and G. A. Jensen, "Uniform Securities Act of Missouri", J. of Mo.Bar 60 (1968).
With respect to the original 2,178 Fund shares purchased by plaintiff, the threshold inquiry is whether or not the plaintiff's purchase of Fund shares is within the scope of the Missouri Securities Act.
It is stipulated that the Fund shares have never been registered under this Act. The applicability of the Act depends upon whether the Fund offered or sold the shares of the Fund in Missouri.
Section 409.415 sets out the scope of the Act's application, and defines precisely the terms "purchase" and "sale":
(a) Sections 409.101, 409.201(a), 409.405, and 409.411 apply to persons who sell or offer to sell when (1) an offer to sell is made in this state, or (2) an offer to buy is made and accepted in this state.
(b) Sections 409.101, 409.201(a), and 409.405 apply to persons who buy or offer to buy when (1) an offer to buy is made in this state, or (2) an offer to sell is made and accepted in this state.
(c) For the purpose of this section, an offer to sell or to buy is made in this state, whether or not either party is then present in this state, when the offer (1) originates from this state or (2) is directed by the offeror to this state and received at the place to which it is directed (or at any post office in this state in the case of a mailed offer); provided however, if an offer is directed to an offeree in a state other than this state and that offer would be lawful if made in such other state, then for the purposes of this section such offer is not made in this state.
(d) For the purpose of this section, an offer to buy or to sell is accepted in this state when acceptance (1) is communicated to the offeror in this state and (2) has not previously been communicated to the offeror, orally or in writing, outside this state; and acceptance is communicated to the offeror in this state, whether or not either party is then present in this state, when the offeree directs it to the offeror in this state reasonably believing the offeror to be in this state and it is received at the place to which it is directed (or at any post office in this state in the case of a mailed acceptance).
Under section 409.415(e), the article published in Barron's did not constitute an offer to sell by the Fund. Nor did the mailing of the Fund's prospectus to plaintiff constitute an offer to sell in the context of the present case. The prospectus was mailed to plaintiff after the Fund had received plaintiff's letter, and enclosed check, offering to buy Fund shares. Clearly, the Fund did not initiate the transaction or act first, but rather, responded to plaintiff's "offer to purchase" its shares. Having received the plaintiff's letter, and enclosed check, the Fund was required by federal law to send a prospectus to plaintiff. 15 U.S.C. § 77e(b) (2). It is the opinion of the Court that the mailing of the prospectus of the Fund to the plaintiff, after receipt by the Fund of plaintiff's letter requesting purchase of Fund shares, did not constitute an offer to sell Fund shares in Missouri.
The Act is applicable when an offer to buy is made and accepted in Missouri. Section 409.415(a). Under Section 409.415(a) an offer to buy is made in this state when the offer originates from this state. Under the facts as stipulated, plaintiff mailed a letter from Missouri to the Fund offering to buy Fund shares, and that offer to buy complies with the terms of the Act, unless the offer is exempted by reason of the proviso of Section 409.415(c).
The proviso of Section 409.415(c) states that "if an offer is directed to an offeree in a state other than this state *1304 and that offer would be lawful if made in such other state, then for the purposes of this section such offer is not made in this state". In the present case, an offer to buy Fund shares in New York would be lawful under New York laws.
There is some ambiguity in the above subsection because the word "offer" stands alone and does not refer to "offer to buy" and/or "offer to sell". However, under Section 409.401(j) (2) the word "offer" is defined in terms of "offer to sell" and when used alone is equated to "offer to sell". Thus, the proviso of subsection (c) of 409.415 applies only to offers to sell, and not to offers to buy. The result is supported by logic since an offer to buy in itself could seldom be illegal under state or federal securities laws. The result is further supported by the purposes of the Act to protect Missouri purchasers of securities and to protect Missouri sellers of securities from unintended violations of the Act. See, L. R. Mills & G. A. Jensen's, "The Missouri Uniform Securities Act", J. of Mo. Bar, supra; James C. Logan, "Blue Skyways and Byways of Missouri", 1969 J. of Mo.Bar 460, 464.
The Court concludes that the plaintiff made an offer to buy Fund shares in Missouri within the meaning of Section 409.415(c).
Subsection (d) of Section 409.415 provides that for purposes of this section, an offer to buy is accepted in this state when acceptance is communicated to the offeror in this state; and further provides that an acceptance is "communicated" to the offeror in this state when the offeree directs it to the offeror in this state and it is received at the place to which it is directed.
The Fund contends that it accepted the plaintiff's offer in New York when the Fund made a record of the order on a "buy" slip; and posted the number of shares issuable to plaintiff and the amount paid therefor in the Fund's books (and computed it in the total shares outstanding on Noon, June 6, 1968).
On June 7, 1968, the Fund physically transmitted plaintiff's check to a New York bank, together with a copy of the confirmation of plaintiff's purchase order; and the original of the confirmation was mailed to plaintiff in Missouri.
In support of its contention, the Fund relies on the long-accepted principle of contract law that an offer which contemplates performance of an act by the offeree, rather than the tender of a promise to perform, is accepted by performance of the act; and that subsequent notice to the offeror that the required act has been performed does not itself constitute an acceptance. Restatement of the Law of Contracts, § 56.
Plaintiff contends that his offer to buy Fund shares was accepted in Missouri by his receipt of the confirmation in Missouri which was mailed to him at a Missouri address by the Fund.
Section 400.8-301(1) (Missouri Uniform Commercial Code) provides that the purchaser of investment securities acquires the rights in the security which his transferor had upon delivery of the security. Section 400.8-313 provides that delivery to a purchaser occurs when "(a) he or a person designated by him acquires possession of a security; . .".
The relationship of "delivery" of the certificate under the Uniform Commercial Code to the issue of "acceptance" of an offer to purchase shares has not been determined by Missouri courts.
This Court is of the opinion that the acceptance of plaintiff's offer to buy could be made by the Fund by performance independently of the passing of the rights of the transferor to plaintiff by delivery of the stock certificate to plaintiff.
Analysis of the plaintiff's offer, and the actions taken by the Fund in reliance upon plaintiff's offer, convince this Court that all of the elements essential to the formation of a contract were present before and without the issuance of a confirmation. The Court finds that neither the confirmation, nor the physical delivery of stock certificates to plaintiff had any affect on plaintiff's right to the shares. See, Sandor v. Ruffer, Ballan & *1305 Co., 309 F.Supp. 849 (S.D.N.Y.1970); Daggett v. Kansas City Structural Steel Company, 334 Mo. 207, 65 S.W.2d 1036 (1933); Duncan v. Kelly, 435 S.W.2d 29 (Mo.App.1968).
However, under Section 409.415, the issue is not whether or not acceptance could be made by performance, or whether or not a contract existed under the laws generally applicable to contracts. The issue is whether or not, under Section 409.415(d), for the purpose of the Missouri Uniform Securities Act, the acceptance of plaintiff's offer to buy was in Missouri.
Subsection (d) provides only one definition of acceptance in this statewhen the acceptance is communicated to the offeror in this state. Subsection (d) further defines communication of the acceptance to the offeror in this state as including both directing it to the offeror in this state and receipt at the place to which it is directed.
The statute does not define "acceptance", but defines "acceptance in this state". The question, therefore, is since the Fund accepted the plaintiff's offer in New York, by performance, whether its communication of that acceptance to plaintiff in Missouri (by mailing the confirmation) is "acceptance in this state" within the meaning of Section 409.415(d).
The official commentary on Section 414 of the Uniform Act (adopted substantially in its entirety as Section 415 of the Missouri Act) states:
8. If the selling dealer in State S merely sends a confirmation or delivers the security into State B, or the buyer in State B sends a check in payment from within State B, the statute of State B does not apply except when under § 414(d) the confirmation or delivery constitutes the seller's acceptance of the buyer's offer to buy.
Thus, under subsection (d) the Fund's mailing of the confirmation to plaintiff in Missouri constituted "acceptance in this state" only if that confirmation constituted the Fund's "acceptance" of plaintiff's offer to buy. However, as noted, subsection (d) does not define "acceptance" and the official commentary is of little help in referring the reader back to subsection (d) to determine whether under that section the confirmation constituted the seller's "acceptance".
As the above discussion indicates, the Court finds that, under principles generally applicable to contracts, the Fund accepted the plaintiff's offer to buy when the Fund complied with the request of plaintiff by issuing Fund shares to plaintiff; and the Fund's subsequent notification to plaintiff of that acceptance did not operate as the acceptance, or create the contract. (At most, the lack of such notification would have ended the plaintiff's duty).
Implicit in the draftsmen's commentary is a recognition of the accepted principles of contract law with respect to acceptance of an offer by compliance with the request in the offer. A degree of ambiguity is present in subsection (d) in that the term "acceptance" is undefined. The Court is of the opinion that, absent a special definition for purposes of the Act, the term "acceptance" retains its ordinary meaning as it pertains to contract law. Therefore, the confirmation to plaintiff did not constitute the acceptance of plaintiff's offer to buy, and in accordance with the official commentary to subsection (d), the Missouri Uniform Securities Act does not apply to plaintiff's purchase of 2,178 Fund shares.
The parties have submitted to this court the question of whether the stock dividend of 952 shares received by plaintiff was within the coverage of the Act.
Section 409.401(j) (6), which defines the terms "sale", "sell", "offer", or "offer to sell" excludes dividends from the scope of such terms as follows:
"The terms defined in this subsection do not include . . . (B) any stock dividend, whether the corporation distributing the dividend is the issuer of the stock or not, if nothing *1306 of value is given by stockholders for the dividend other than the surrender of a right to a cash or property dividend when each stockholder may elect to take the dividend in cash or property or in stock. . . ."
Plaintiff's original letter offering to buy shares instructed the Fund to reinvest all dividends. The parties have stipulated that the shareholders of the Fund were offered the opportunity to receive a stock dividend in lieu of cash in the amount of $2.38 per share. By written notice transmitted to all shareholders on April 29, 1969, the Fund stated its intent to make a capital gains distribution in excess of $2.00 per share.
The plaintiff denies that he actually received the notice, but plaintiff did not cancel his prior instruction to the Fund to reinvest all dividends. The Fund mailed the notice to the same address specified by plaintiff in his original letter offering to purchase Fund shares. The number of shares actually issued to plaintiff as a dividend was 952, with a net asset value per share of $5.44.
Section 409.401(j) (6) does not require that plaintiff actually make an election of cash or stock for the dividend exemption to apply. The only requisite is the stockholder give nothing of value for the dividend. See, H. M. Bateman, "The Missouri Uniform Securities Act", 34 Mo.L.Rev. 463, 503-504 (1969). The section provides that if a cash or stock election is offered, it will not remove the dividend from the exemption. If the election were not offered, the exemption applies because, clearly, nothing of value is given.
In any event, in the present case, an election was offered by the Fund to its stockholders. Plaintiff gave nothing of value for the dividend. Had plaintiff actually received the notice and surrendered his right to cash, plaintiff would have given nothing of value for the dividend under Section 409.401(j) (6) (b). Plaintiff's non-receipt of the cash-or-shares offer does not provide a basis for rescission.
It is the opinion of the Court that the stock dividend of 952 shares received by plaintiff is outside the coverage of the Missouri Uniform Securities Act.
The Court, having concluded that the Fund is not liable to plaintiff with respect to the sale of the original 2,178 shares or the stock dividend of 952 shares, finds it unnecessary to discuss the issue of the liability of Frederic S. Mates by reason of his being the controlling officer and director of the Fund.