**Fred P. KREIS, Jr., Appellant,**

v.

**MATES INVESTMENT FUND, INC., and Frederick S. Mates, Appellees.**

**No. 72–1050.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1972.

Decided Feb. 16, 1973.

---

William J. O'Herin, St. Louis, Mo., for appellant.

David Rosen, Stein & Rosen, New York City, for appellee.

Before BRIGHT and STEPHENSON, Circuit Judges, and TALBOT SMITH, District Judge.*

PER CURIAM.

The matter before us is an action for rescission. The plaintiff, Fred P. Kreis, Jr. (hereafter "Kreis"), a citizen and resident of Missouri, bought shares of the defendant Mates Investment Fund, Inc. (hereafter, the "Fund") by mail, relying upon a glowing account thereof published in Barron's National Business and Financial Weekly in the issue dated

---

* Eastern District of Michigan, sitting by designation.

June 3, 1968.[1] Eventually Kreis became unhappy with his purchase. Hence this action.

The ground of rescission asserted was non-compliance by the Fund with the registration provisions of the Missouri Uniform Securities Act, Chapter 409, RS Mo.1969 (hereafter the Act, or the "new" Act), V.A.M.S.

The case was tried upon stipulated facts, set forth in detail in the exhaustive opinion of the District Court, reported in 335 F.Supp. 1299 (E.D.Mo. 1971). We re-state only those facts essential to our ruling.

The Fund is a Delaware Corporation, an "open end" investment company, registered under the Investment Company Act of 1940, with its principal place of business in New York. Its business is that of operating an investment fund and selling shares to the public. Mr. Frederick S. Mates is the president, a director and controlling officer of Mates Investment Fund, Inc., and the sole shareholder of Mates Management Company, Inc. The Fund is duly registered in the Office of the Attorney General of the State of New York and the Fund was, under the laws of New York, entitled to accept offers for the purchase of shares in New York. It had not registered its shares for sale in Missouri under the Act.

After reading the Barron story, Kreis wrote to the Fund, enclosed his personal check for $20,000, and requested that the Fund sell to him the number of shares purchasable for such sum. He requested that delivery be made to the Lindberg Bank, in care of Mr. Spies. The Fund, in due course, cashed the check and mailed Kreis a "confirmation" dated June 5, 1968, reflecting the sale to him of 2,178 shares, the Fund retaining, after adjustments, the sum of $19,541.-02. On the same date the Fund posted the sale on its books, and on June 7, physically delivered Kreis' check to the Custodian, Bank of New York. Computation of the Fund's net asset value on June 6, 1968, reflected Kreis' purchase of the Fund shares. The shares were mailed by the Fund to a postal address within Missouri, as was the confirmation. At a later date Kreis was the recipient of 952 additional shares, a stock dividend credited by the Fund to Kreis, valued at $5,178.88.

On May 19, 1969, Kreis sought rescission of his purchase. He had sought to purchase additional shares, but the form letter from the Fund on September 3, 1968, declined his request. The ground stated was that the Fund's shares were not registered for sale in Missouri. Moreover, with reference to the purchase of shares by persons in states where shares were not qualified to be sold, the footnotes to the May, 1969, annual report of the Fund stated that such shareholders "may have a right to rescind their purchases." Mr. Kreis thereafter tendered the return of the shares of the Fund in issue and demanded the return of the price plus interest and attorneys' fees within the provisions of the Missouri Securities Act. The Fund refused to rescind.

It was the holding of the District Court that, upon the facts so stipulated, although there was an offer by Kreis to buy the shares of the Fund under Section 409.415(c), there was no acceptance thereof in Missouri and hence that the Act does not apply to the purchase. In addition, it was held that the stock dividend of 952 shares was outside the coverage of the Act, being exempt under Section 409.401(j)(6) thereof. The Court thus having concluded that the Fund was not liable to Kreis with respect to the sale of the original 2,178 shares or the stock dividend of 952 shares, did not reach the issue of the liability of Frederick S. Mates, asserted by reason of his being the controlling officer and director of the Fund.

1. This Weekly was at the time published and printed entirely without the State of Missouri. Its circulation in the state was less than one-third of its total circulation. See Section 409.415(e) RSMo 1969.

The principal issues on appeal turn on the interpretation of the terms offer and acceptance under the Act. The appellant, Kreis, argues that the Court below erred in holding that the offer to buy the securities was not both made and accepted in Missouri. The appellee Fund asserts that neither the offer nor the acceptance can be deemed to have occurred in Missouri.

The "new" Missouri Uniform Securities Act [2] represents a substantial adoption of the Uniform Securities Act. [3] The portion with which we are here principally concerned is a separate section dealing with what was aptly termed (by the draftsmen of the Uniform Act) to be the "bewildering state of affairs" [4] in the case law governing transactions which crossed state lines. "In order to resolve many uncertainties in this area of conflict of laws, the draftsmen undertook in Section 414 of the Uniform Act [Section 415 of the new Missouri Act] to codify basic rules to determine the applicability of the substantive provisions of the Act to interstate securities transactions and to define the jurisdiction of the courts over nonresidents in actions under the Act." [5]

The Act provides in part as follows: 409.415 "Scope of the act and service of process

(c) *For the purpose of this section,* an offer to sell or to buy is made in this state, whether or not either party is then present in this state, when the offer (1) originates from the state or (2) is directed by the offeror to this state and received at the place to which it is directed (or at any post office in this state in the case of a mailed offer); *provided however, if an offer is directed to an offeree in a state other than this state and that offer would be lawful if made in such*

other state, then for the purposes of this section such offer is not made in this state.

(d) *For the purpose of this section,* an offer to buy or to sell is accepted in this state when acceptance (1) is communicated to the offeror in this state and (2) has not previously been communicated to the offeror, orally or in writing, outside this state; and acceptance is communicated to the offeror in this state, whether or not either party is then present in this state, when the offeree directs it to the offeror in this state reasonably believing the offeror to be in this state and it is received at the place to which it is directed (or at any post office in this state in the case of a mailed acceptance)" [emphasis supplied].

It is clear that what the Act is here seeking is to bring both order and predictability into an area in which decisions in the various states heretofore rendered, "defy generalization." [6] Common law contract concepts, where supplanted by the Act, obviously no longer control in the applicable areas.

With respect to offer and acceptance (with which we are particularly concerned) the Act, as quoted above, defines its own terms but solely, it must be stressed, "[f]or the purpose of this section," that is to say for the scope of the applicability of the new Act and service of process thereunder. For these purposes, "an offer to sell or to buy is made in this state . . . when the offer (1) originates from this state . . . ." Stopping at this point it would seem clear upon our facts that Mr. Kreis made an offer in Missouri. But the statute contains a proviso (not found in the Uniform Act) and it is this proviso that gives rise to the controversy over the term "offer." The proviso,

2. This Act replaced the former Missouri Securities Act, bearing the same chapter number in the Missouri Revised Statutes and hence is commonly referred to as the "new" Act. Bateman, The Missouri Uniform Securities Act, 34 Mo.L.R. 463 (1969).

3. 9C Uniform Laws Annotated.

4. Loss and Cowett, Blue Sky Law, 1958 ed., 186.

5. Bateman, n. 2, *supra.*

6. Loss and Cowett, *supra,* note 4, at 186.

**1312**

according to Jensen and Mills [7] in their article in 24 J.Mo.Bar 60 (1968), had its origin in the problem presented (to use their terms) where a Missouri broker offered to sell to a customer in Illinois a security which was registered under the Securities Law of Illinois but not registered in Missouri. As the Act stood without the proviso the Missouri broker would be violating Missouri law. To eliminate the problem the following proviso was added to the new Act:

". . . provided, however, if an offer is directed to an offeree in a state other than this state and that offer would be lawful if made in such other state, then for purposes of this section such offer is not made in this state."

The issue as to construction arises over the content of the word "offer" in the clause of the proviso stating "if an offer is directed to an offeree in a state other than this state . . ." Does the word offer, so used, mean offer to buy, offer to sell or both?

■■ We turn to the defining section of the Act, Section 409.401(j)(2). There we find the word "offer" defined in terms of an offer to sell and equated to an "offer to sell." [8] The District Court concluded, under the plain words of such definition, that the word "offer," so used, applies only to offers to sell and not to offers to buy. Such construction, moreover, makes sense not only in the light of what the draftsmen of the Act were seeking to accomplish, *supra*, but also in the practical realities of the market since offers to buy, as such, would rarely be illegal under any law. We conclude, with the District Court, that "the plaintiff made an offer to buy the Fund shares in Missouri within the meaning of Section 409.-415(c)."

■ With regard to acceptance, again it is to be stressed that the Act does not speak in terms of general contract law, with all of the complexities and subtleties acquired over years of classroom hypothetical questions (can the offer to pay $100 for touching the top of the flagpole be revoked as the offeree's hand reaches out for the touch?), but solely as to "acceptance in this state" and "[f]or the purpose of this section," that is, for scope of coverage under the new Act and service of process. In the subsection devoted to acceptance, Section 409.415(d), the stress is upon communication. Substantially, an offer is accepted here in Missouri when it is "communicated to the offeror in this state" (and has not theretofore been communicated outside the state). And it is "communicated to the offeror in this state" when the offeree directs it to him here and it is received where directed. At that point, for the purpose of the new Act, the offer has been accepted in Missouri.

In construing the above Subsection (d) the appellee urges that the mailing of the confirmation into Missouri "would constitute acceptance in this state only if that confirmation constituted the Fund's 'acceptance' of appellant's offer to buy." But, it goes on, such confirmation was not an acceptance, since acceptance had already been "accomplished by the Fund's performance."

The difficulty with the argument is that it ignores the plain language of the Act. We are concerned with 1) acceptance "in this state" 2) for the purposes of this Act, and, as we have noted, such acceptance turns upon communication. Consequently, whether there has been a prior acceptance under orthodox contracts principles in New York, or whether acceptance is accomplished by the precise contents of some communication relating thereto, is not material to the resolution of the applicability of the new Act to the transaction. For, in either

7. Chairman, and member, respectively, of the Securities Law Subcommittee of the Missouri Bar, which drafted the new Missouri Uniform Securities Act. See 24 J.Mo.Bar at 62 and 63.

8. § 409.401(j)(2): "'Offer' or 'offer to sell' includes every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value."

event, it is communication to the Missouri offeror that is the critical requirement. When that takes place the offer "is accepted in this state," provided, of course, that there has been no previous communication "to the offeror, orally or in writing, outside this state."

We note, in passing, that such is also the interpretation stated in Logan's Blue Sky Ways and Byways in Missouri, 25 J.Mo.Bar 460, 464 (1969), in these terms: "Furthermore, the situs of an acceptance is Missouri if it was originally communicated to the offeror in Missouri." The official comments to the Act also support such interpretation. Comment 8 thereof states:

> "If the selling dealer in State S merely sends a confirmation or delivers a security into State B, or the buyer in State B sends a check in payment from within State B, the statute of State B does not apply *except when under 414(d) the confirmation or delivery constitutes the seller's acceptance of the buyer's offer to buy.*" (Emphasis supplied.)

Section 414(d), referred to in the quoted Comment is, it will be noted, the acceptance subsection of the Uniform Securities Act, with its stress upon communication "to the offeror in this state."

 In view of the stipulated fact that the only communication received by Kreis as to the action taken upon his offer, namely its acceptance in New York, was the written confirmation of the purchase, mailed by the Fund to Kreis, addressed to him, and received by him, at his home in Missouri, we hold that under the terms of Section 409.415(d) there was acceptance in this state. We need not, then, explore appellant's arguments that the terms of his offer were not exactly complied with, involving thus a rejection, a counter-offer, and the completion of the contract only upon Kreis' acceptance of the allegedly modified terms. Such orthodox contractual complexities have, wisely we think, been discarded by the terms of the Act for purposes of the scope and enforcement thereof.

The appellee, in closing, urges that if we find both offer and acceptance to have taken place in Missouri, we go further and hold that "the Missouri Act would unconstitutionally deprive the Fund of due process of law, through the extraterritorial abrogation of contract rights which arose in New York." So far as our study of this record reveals, no such issue was pleaded below, if argued it is not adequately reflected in the record before us, and it is not touched upon in the trial court's opinion. We thus decline the invitation tendered. Ludwig v. Marion Laboratories, Inc., 465 F.2d 114 (8th Cir. 1972). Nor do we rule upon the disposition of the stock dividend, or the value thereof, received by Kreis, such issues not having been reached by the District Court in the light of its liability ruling.

Reversed and remanded for further proceedings not inconsistent with this opinion.