**Earl W. AH MOO, Plaintiff–Appellee,**

v.

**A.G. BECKER PARIBAS, INC., a/k/a Paribas North America, Inc., Defendant–Appellant.**

No. 87–2248.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 12, 1988.

Decided Sept. 15, 1988.

John Rapp, Honolulu, Hawaii, for defendant-appellant.

Sherman S. Hee, Gerald C. Yoshida, Terry D. Carlone, Hee, Yoshida & Carlone, Honolulu, Hawaii, for plaintiff-appellee.

Before PREGERSON, BOOCHEVER and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

A.G. Becker Paribas, Inc. ("Becker") appeals judgment for Earl W. Ah Moo ("Ah Moo") on misrepresentation, breach of contract, and violation of Hawaii's Uniform Securities Act, Title 26, Haw.Rev.Stat. § 485–1 to § 485–25 (1985). This action arises out of the sale of securities totalling $27,500 by Becker's vice president and salesman, as well as out of Becker's failure to register, pursuant to Hawaii law, either its authorized salesman or the securities sold to Ah Moo.

I

Becker is a Delaware corporation doing business in California, Illinois, and New York. Steven Brennan, a securities broker for ten years prior to meeting Earl Ah Moo, was Becker's vice president and authorized salesman.

In 1980, Brennan met Ah Moo. In December 1981, at an event in Hawaii, Brennan offered Ah Moo "some investments that [Ah Moo] might be very interested in." Ah Moo was aware, at that time, that Brennan was the vice president of Becker. Brennan told Ah Moo he would provide details relating to the transaction upon return to California.

Two weeks later, Brennan telephoned Ah Moo from Brennan's office at Becker in California and asked Ah Moo if he would be interested in a $27,500 investment with a $15,000 profit potential over a one month period, at the risk of losing only $5,000. Brennan neither identified the proposed stock nor informed Ah Moo that the stock was traded "over-the-counter."

On December 28, 1981, Ah Moo telephoned Brennan from Hawaii to confirm his investment of $27,500 in the recommended (still unidentified) stock, on condition that any possible loss would not exceed $5,000. The district court found that:

Brennan agreed[,] on behalf of Becker to limit ... Ah Moo's loss as aforesaid.... [I]n reasonable reliance upon that agreement and Brennan's actual and apparent authority to bind Becker to that agreement, ... Ah Moo sent a check from Honolulu, Hawaii[,] made payable to Becker in the amount of $27,500.

The district court found that Ah Moo "would not have invested the $27,500 if Brennan had not promised to limit ... Ah Moo's loss as aforesaid." The court noted that, "Brennan also admitted that he knew ... Ah Moo would never have made the investment if ... Ah Moo had known he could lose all of the $27,500...."

Ah Moo's money was invested in Energy Reserves Group, Inc. stock. Brennan relied on the advice of Becker's stock analyst in that choice.

Sometime after Becker's authorized salesman and Ah Moo entered into this agreement and after Ah Moo had purchased the stock, Ah Moo received an undated document entitled "Margin Agreement/Loan Consent." Brennan sent the document to Ah Moo without explanation. Signing the undated document, Ah Moo returned it to Brennan.

On January 8, 1982, Ah Moo telephoned Brennan seeking information about his investment. Brennan neither spoke with Ah Moo nor returned Ah Moo's telephone call.

On January 16, 1982, Ah Moo received a telex message informing him that there had been "a margin call" on his investment. Again, Ah Moo telephoned Brennan to "find out what was going on." Brennan told Ah Moo "not to worry," and that Brennan would "take care of it."

During January and February, 1982, Ah Moo received additional telex messages from Becker indicating that his investment was being "sold on margin". Ah Moo telephoned Brennan, who "continued to reassure Ah Moo ... not to worry about his stock...."

On February 19, 1982, Brennan purchased, without Ah Moo's authorization, Tipperary Corporation stock with Ah Moo's money. This purchase was executed on advice from Becker's over-the-counter trader.

On March 8, 1982, Brennan purchased National Semiconductor Corporation stock with Ah Moo's money, again without his authorization.

At no time did Becker secure written authorization to purchase additional stock with Ah Moo's money, following authorization of the Energy Reserves Group stock purchase. The aforementioned securities were not registered under Haw.Rev.Stat. §§ 485–8, 9, or 10 at any time between December 18, 1981 and March 23, 1982.

Becker did not register Brennan, its authorized salesman, pursuant to Haw.Rev. Stat. § 485–14(h) and (i), at any time before or during this period.[1]

The district court found that Becker had "failed to supervise Brennan's management of Ah Moo's ... account with Becker...." and that Ah Moo had "relied exclusively upon the recommendations of Becker ... rather than [on] his own expertise."

Becker was a registered securities "dealer," pursuant to Haw.Rev.Stat. § 485–14(b) and (c), at all times during the foregoing transactions.

On October 26, 1982, after Ah Moo's investment had been sold by Becker, Ah Moo requested restitution. Becker refused.

Ah Moo filed suit in federal court against Becker pursuant to 28 U.S.C. § 1322, under Hawaii law.

On September 29, 1986, the district court ordered rescission, assessing special damages in the amount of $27,500 (the amount of Ah Moo's investment), interest in the amount of $6,260.86 and attorney's fees in the amount of $38,975.66, pursuant to Haw.Rev.Stat. § 485–20.

The district court concluded that Becker had breached the agreement with Ah Moo, negotiated by Becker's vice president and authorized salesman, to limit Ah Moo's losses to $5,000. In the alternative, the court found that a mutual mistake of fact regarding Brennan's ability to limit Ah Moo's losses, combined with Brennan's failure to disclose the stock traded, rendered the initial stock transaction void. Finally, the court concluded that Becker violated Haw.Rev.Stat. § 485–8 by offering to sell and by selling unregistered securities, and that Becker violated Haw.Rev.Stat. § 485–14(a) by failing to register its authorized salesman, permitting rescission under Haw.Rev.Stat. § 485–20.[2]

Becker's motion for a new trial was denied on May 4, 1987. Appeal was timely taken. We have jurisdiction under 28 U.S.C. § 1291.

## II

Becker claims that it was denied an adequate opportunity for discovery on the non-registration claims, due to the brevity of Ah Moo's complaint. It claims that an affidavit is inadmissible as proof of non-registration. Finally, it claims that Hawaii law should not have been applied. These claims are without merit.

---

1. Brennan registered as a salesman, pursuant to § 485–14(h) and (i), on March 30, 1982, one week after the last transaction undertaken on behalf of Ah Moo.

2. Section 485–8 states, in relevant part: "It shall be unlawful for any person to sell or offer to sell any security except of a class [or transaction] exempt ... unless the security has been registered ..."

   Section 485–9(b) pertaining to "registration by notification," states in relevant part: "Procedure for registration by notification. Securities entitled to registration by notification shall be registered by the filing ... by any registered *dealer* interested in the sale thereof...." (Emphasis added).

   Section 485–10, pertaining to "registration by qualification, application to commissioner, etc.," states in relevant part: "(a) All securities required by this chapter to be registered before being sold in the State and not entitled to registration by notification ... shall be registered only by qualification ... (b) the commissioner of securities shall receive ... applications for registration ... and [these applications] shall be filed ... either by the issuer ... or by any registered *dealer* desiring to sell the same within the State." (Emphasis added).

   Section 485–14(a) states, in relevant part: "It is unlawful for any person to transact business in this State as a ... salesman ... unless registered under this chapter." Section 485–14(i) states: "Registration of Salesmen. An information statement ... shall be filed ... with an appointment of the applicant as a registered salesman by a registered dealer ..."

A

Becker argues that it was denied timely notice of Ah Moo's claims, under Haw.Rev. Stat. §§ 485–8 and 485–10,[3] that unregistered securities were sold to Ah Moo by Becker's unregistered salesman. On appeal, Becker asserts that the relevant securities are exempt as "isolated non-issuer transactions" pursuant to section 485–6(1), and as "recognized securities" pursuant to section 485–6(2).

■ We conclude that Becker had timely and specific notice of the non-registration claims prior to trial, and that Becker was not prejudiced in the presentation of its defense.

We review the district court's discovery ruling for abuse of discretion. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir.), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985). We also review the denial of a motion for new trial under the abuse of discretion standard. *Robins v. Harum*, 773 F.2d 1004, 1006 (9th Cir. 1985).

Fed.R.Civ.P. 8(a)(2) requires that a complaint be "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court, in *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), held that the complaint need not include more than "fair notice of what the plaintiff's claim is and the ground upon which it rests."

The complaint here alleged facts supporting an unlawful sale of securities by Becker to Ah Moo and alleged that "aforesaid acts and conduct of defendants constitute fraudulent and other prohibited practices within the meaning of Chapter 485 of the Hawaii Revised Statutes."

Upon receiving the complaint, Becker declined to move for a more definite state-

ment under Fed.R.Civ.P. 12(e). Becker also declined to move for judgment on the pleadings under Fed.R.Civ.P. 12(c), for further discovery under Fed.R.Civ.P. 26–37, or for summary judgment under Fed.R.Civ.P. 56. Becker was entitled to make each of these motions. *See Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D.Haw.1953). That it did not, suggests a cognizance of the foregoing facts.

Nevertheless, the district court found that Becker was on notice as to each of Ah Moo's specific "non-registration" claims "approximately one month before the July 22, 1986 trial," and Ah Moo "filed and served [a] ... Trial Memorandum Re: Hawaii's Blue Sky Laws[,] informing defendant in writing of Ah Moo's non-registration claim [on July 2, 1986]."

If the original complaint lacked specificity, this memorandum certainly must have put Becker on notice as to the full extent of the non-registration claims. Defendant Becker's trial memorandum, filed sixteen days prior to trial, specifically addressed the merits of the non-registration claims.

Fed.R.Civ.P. 15(b) states clearly:

[W]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings [and] ... failure so to amend does not affect the result of the trial of these issues.[4]

In this case, the district court did not find any prejudice resulting to defendant-Becker from Ah Moo's failure to formally amend the pleadings prior to trial. Although Becker asked for a continuance on other grounds, it did not seek additional time to prepare a defense on the non-registration claims. In view of the time which elapsed between Ah Moo's most specific articulation of the non-registration claims and

---

**3.** The district court found that the stocks sold by Becker to Ah Moo were not "registered as securities," with the Commissioner of Securities at Hawaii's Department of Commerce and Consumer Affairs, pursuant to § 485–8, either before or during the period from December 18, 1981 to March 23, 1982.

**4.** At common law, if a timely and properly-framed complaint would have permitted relief and no prejudice resulted from an amendment at the chancellor's discretion, relief on the original complaint could be granted. *See, e.g., Friederichsen v. Renard*, 247 U.S. 207, 212–13, 38 S.Ct. 450, 452, 62 L.Ed. 1075 (1918); *Hardin v. Boyd*, 113 U.S. 756, 761–63, 5 S.Ct. 771, 773–74, 28 L.Ed. 1141 (1885).

trial, we conclude that there is no basis for rejecting the court's finding.

■ Since adequate opportunity for discovery was available and evidence was not submitted at trial to support the claims of exemption, evidence relating to the exemptions is not properly considered on appeal. *See Schaafsma v. Morin Vermont Corp.,* 802 F.2d 629, 638 (2d Cir.1986) (failure to plead the "isolated transaction" exemption constitutes waiver of exemption); 26 Haw. Rev.Stat. § 485–17.

### B

■ Becker claims that admission of an affidavit as proof of non-registration of securities was improper, as Becker was thus denied an opportunity to cross-examine the affiant. We review de novo a question of law implicating a constitutional right. *LaDuke v. Nelson,* 762 F.2d 1318, 1322 (9th Cir.1985).

The district court received in evidence a sworn affidavit, pursuant to Fed.R.Civ.P. 44(b), from Russell H. Yamashita, Corporation and Securities Administrator for the State of Hawaii and Deputy Securities Commissioner of the Business Registration Division. That affidavit, of a negative records search, was introduced to demonstrate Becker's failure to register securities sold to appellee.

To the objection of Becker, the court responded:

> This [affidavit] *doesn't preclude defense counsel from calling this witness,* and if what you are saying to me is that if the court is likely to allow the affidavit in as evidence[,] that it would be your desire to have an opportunity to examine him first, ... *that can certainly be done....* [C]ertainly you [defense counsel] have a right to put him [the affiant] on the stand ... So, is it your desire to converse with this witness or to possibly call him?

(Emphasis added).

Defense counsel replied: "No."

Since Becker was offered an opportunity to cross-examine affiant and declined that opportunity, Becker will not be heard to complain that his right to cross-examine the affiant has been denied. Admission of the affidavit was, under these circumstances, not improper.[5]

### C

■ Becker claims that Hawaii securities law does not apply, since its salesman sold the stock by telephone from California. Becker also claims that its non-registration of a "salesman" and of securities fails to implicate it under Hawaii law, since Becker was a registered securities "dealer" in Hawaii.

### (1)

We review the district court's choice of law de novo. *Olympic Sports Product, Inc. v. Universal Athletic Sales Co.,* 760 F.2d 910, 912 (9th Cir.1985), *cert. denied,* 474 U.S. 1060, 106 S.Ct. 804, 88 L.Ed.2d 780 (1986).

In a diversity action, we rely on the substantive law of the forum state. *Stoddard v. Stoddard,* 641 F.2d 812, 813 & n. 1 (9th Cir.1981); *Gee v. Tenneco, Inc.,* 615 F.2d 857, 861 (9th Cir.1980).

Hawaii's blue sky laws are applicable if there was a physical nexus between the "sale or offer to sell" and the State of Hawaii. *See Travelers Health Ass'n. v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950) (Virginia's "blue sky law" applied to Nebraska mail order business, despite business location out of state); *Parvin v. Davis Oil Co.,* 524 F.2d 112, 117 (9th Cir.1975); *see also Petrites v. J.C. Bradford & Co.,* 646 F.2d 1033, 1036–37 (5th Cir.1981); *Kreis v. Mates Investment Fund,* 473 F.2d 1308, 1312–13 (8th Cir.1973) (per curiam); *Stimmel v. Shearson, Hammill & Co.,* 411 F.Supp. 345 (D.Or.1976); *Ansbro v. Southeast Energy Corp. Group, Ltd.,* 658 F.Supp. 566, 569–70 (N.D.Ill.1987).

---

**5.** Corroborating evidence was also introduced, including a document production request for "[a]ny and all documents relating to stocks and other security transactions between Plaintiff and A.G. Becker." No such registration documents were ever produced.

The district court found a physical nexus between Becker's salesman's "sale or offer to sell" [6] securities and the State of Hawaii.

We shall not disturb the district court's findings of fact unless they are clearly erroneous. *See* Fed.R.Civ.P. 52(a); *La-Duke v. Nelson,* 762 F.2d at 1321.

Since there is no dispute that Brennan, Becker's salesman, traveled to Hawaii and there offered to Ah Moo, resident of Hawaii, the opportunity to purchase stock; that Becker's salesman repeatedly made contact with Ah Moo in Hawaii, to confirm the sale; that Becker proceeded to send telexes, mailgrams, account statements and correspondence to Hawaii; and that the contract upon which Becker now relies was sent to and signed in Hawaii, the district court's finding of a physical nexus between the "sale or offer to sell" securities and the State of Hawaii is not clearly erroneous.

### (2)

■ Becker was a registered securities "dealer" in Hawaii. However, Becker did not register its "salesman" in Hawaii, as required by Haw.Rev.Stat. § 485–14(a). Becker also did not register securities sold to Ah Moo, as required by Haw.Rev.Stat. § 485–8.

Becker claims that it should not be held liable for conduct of an unregistered salesman under Hawaii securities law since Becker was a properly registered "dealer."

Becker is liable for failing to register its salesman and for failing to register securities sold to Ah Moo; these obligations are incumbent upon all "dealers" under Haw. Rev.Stat. §§ 485–8, 485–9, 485–10 and 485–14. Moreover, Haw.Rev.Stat. § 485–20 states that any party who "aided in any way in making the sale, shall be jointly and severally liable to the purchaser in an action at law...." There is no question that Becker assisted in the sale by its salesman. Thus, Becker is liable for the conduct of its salesman.

### III

■ Interpretation of a contract is a mixed question of law and fact, and is

subject to de novo review. *Miller v. Safeco Title Ins.,* 758 F.2d 364, 367 (9th Cir. 1985). Fact findings extrinsic to a contract are reviewed for clear error. *Marchese v. Shearson Hayden Stone, Inc.,* 734 F.2d 414, 417 (9th Cir.1984). Findings relating to an offer, acceptance or revocation are reviewed for clear error. *Collins v. Thompson,* 679 F.2d 168, 170 (9th Cir. 1982).

Becker argues that it is not bound by the oral promise of its salesman, limiting Ah Moo's losses to $5,000 on the $27,500 investment. Becker does not provide authority for this proposition, but cites an undated document entitled "margin agreement/loan consent." The standardized form at issue includes, *inter alia,* one sentence which reads: "The undersigned ... agrees ... not to be bound by any representation or agreement heretofore or hereafter made...."

We need not address the enforceability of this provision. The district court found that the undated document was sent and signed sometime after two telephone conversations between Becker's salesman and Ah Moo, each of which specifically confirmed the $5,000 loss limitation provision.

The document was also signed after full payment by Ah Moo in "reasonable reliance upon that [loss limitation provision]," according to the district court. No facts on record contradict these findings.

The undated "margin agreement/loan consent" was properly interpreted not to bar recovery.

Generally, promises that reasonably and foreseeably induce detrimental reliance permit recovery under the theory of promissory estoppel. *Jablon v. United States,* 657 F.2d 1064, 1069 (9th Cir.1981); *Hass v. Darigold Dairy Products, Inc.,* 751 F.2d 1096, 1100 (9th Cir.1985); *Ravelo v. County of Hawaii,* 66 Haw. 194, 658 P.2d 883, 888 (1983). Ah Moo's detrimental reliance upon the promise of Becker's vice president and salesman was both reasonable and foreseeable.

---

**6.** *See* section 485–1(11).

Specifically, a false or misleading prediction by a dealer's salesman, if it induces reliance, may give rise to dealer liability. *See Marbury Management Inc. v. Kohn,* 470 F.Supp. 509, 514 (S.D.N.Y.1979), *aff'd in part, rev'd in part,* 629 F.2d 705 (2d Cir.), *cert. denied sub. nom. Wood Walker & Co. v. Marbury Management Inc.,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980); *see also Seiler v. E.F. Hutton & Co.,* 584 F.Supp. 607, 612 (D.N.J.1984) (broker-dealer must have reasonable basis for predictions); *Bush v. Rewald,* 619 F.Supp. 585, 593 (D.Haw.1985) (10b–5 liability for failure to disclose material facts); *Demarco v. Security Planning Service, Inc.,* 462 F.Supp. 1066, 1070 (D.Ariz.1978) (controlling persons of investment company liable for misleading statements about securities, upon which purchasers reasonably relied); *Upton v. Trinidad Petroleum,* 652 F.2d 424 (5th Cir.1981) (controlling persons jointly and severally liable for non-registration).

Moreover, a dealer "is *automatically* liable [under section 485–8] ... for its sales of unregistered [securities]," when an officer of the corporation negotiated that sale. *Young v. Kwock,* 52 Haw. 273, 474 P.2d 285, 287 (1970).

The district court also found that "Becker breached its agreement with Ah Moo ... to limit Ah Moo's ... losses...." The oral agreement was properly considered. *See Matter of O.W. Ltd. Partnership,* 4 Haw. App. 487, 668 P.2d 56, 60 (1983).

In view of the extensive admissions by Becker's authorized salesman, confirming each of the foregoing facts, we conclude that the district court's findings of fact are not clearly erroneous, and that its interpretation of the undated "margin agreement/loan consent," in view of the preceding agreement, is accurate.

## IV

Becker claims that rescission or special damages in the amount of Ah Moo's initial investment, plus prejudgment interest and attorneys' fees, is improper. The reason cited is Ah Moo's inability to return the stock purchased.

A question of statutory entitlement to damages is reviewed de novo. The amount of a damage award will not be disturbed unless that award is clearly erroneous. *See United States ex rel. Morgan & Son, Inc. v. Timberland Paving & Const.,* 745 F.2d 595, 599 (9th Cir.1984). The prejudgment interest award is reviewed for abuse of discretion, *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff,* 768 F.2d 1099, 1106 (9th Cir.1985), as is the attorney's fee award. *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1025–26 (9th Cir.1985), *cert. denied,* 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed. 2d 778 (1986).

The district court refused to enforce the "margin agreement/loan consent," since the prior agreement set clear and specific terms for the stock transaction. Becker's salesman's subsequent conduct, including repeated assurances to Ah Moo "not to worry about his stock," supported Ah Moo's continued reliance on the initial agreement. Since Becker's salesman sold the stock which it now demands of Ah Moo, rescission is not improper for the reason that Ah Moo is unable to return that stock.

In any event, whether Ah Moo "[is] in a position to return the stock" is immaterial, since rescission is the prescribed remedy, under Haw.Rev.Stat. § 485–20.[7]

Special damages may also be premised on promissory estoppel. *See, e.g., Young v. Kwock,* 434 P.2d at 286; *Clarke v. Title Guaranty Co. of Hawaii,* 44 Haw. 261, 353 P.2d 1002, 1006–07 (1960) (promissory estoppel generally entitles purchaser to rescission); *Bishop Trust Corp. v. Kamokila Dev. Co.,* 57 Haw. 330, 555 P.2d 1193, 1196 (1976) (rescission for material nonperformance permitted, even if per-

---

7. Section 485–20 provides:

(a) Every sale made in violation of this chapter shall be voidable at the election of the purchaser; and the person making the sale and [persons who] ... aided in any way in making the sale, shall be jointly and severally liable to the purchaser in an action at law ... for the full amount paid by the purchaser, with interest, together with all taxable court costs (and reasonable attorneys' fees)....

formance impossible or remedy unavailable in action on contract).

By analogy, rescission with prejudgment interest is often the remedy for violation of federal securities laws. *See, e.g., Blackie v. Barrack,* 524 F.2d 891, 909 (9th Cir.1975) (rescission or consequential damages, as alternative to out-of-pocket loss is within discretion of district court), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 651 F.2d 615, 621 (9th Cir.1981) (Rule 10b–5 violation permits recovery of difference between value of consideration given and security received, plus consequential damages or rescission); *see also Whittaker v. Whittaker Corp.,* 639 F.2d 516, 533 (9th Cir.), (prejudgment interest award is within discretion of district court), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981).

## CONCLUSION

Becker had ample notice of the non-registration claims. The choice of Hawaii law was appropriate. Becker failed to honor a loss-limitation provision in the original agreement with Ah Moo, inducing detrimental reliance and violating Hawaii securities law. Rescission was not improper.

We grant Ah Moo's request for attorneys fees on appeal pursuant to Haw.Rev. Stat., § 485–20 and we affirm the district court's award of attorneys fees. We deny Ah Moo's request for attorneys fees pursuant to Fed.R.App.P. 38, since we find Becker's claims nonfrivolous.

AFFIRMED and REMANDED to the district court for the determination of attorneys fees incident to appeal and consistent with the Hawaii statute.